CAPITOL AGGREGATES, INC., Appellant,

v.

Hazel WALKER et vir, Appellees.

No. 11717.

Court of Civil Appeals of Texas.

Austin.

Dec. 17, 1969.

Rehearing Denied Jan. 7, 1970.

Baker & Watkins, Thomas H. Watkins, Austin, for appellant.

Sneed, Vine, Wilkerson & Selman, Sam R. Perry, Austin, for appellees.

HUGHES, Justice.

Appellant, Capitol Aggregates, Inc., obtained a money judgment against appellee, Clyde Walker, in the court below, Cause No. 167,482, for the sum of $10,077.27, plus interest and costs, and the judgment being unpaid, appellant caused an execution to issue by the clerk of the court which, pursuant to such judgment, was placed in the hands of T. O. Lang, Sheriff of Travis County. Sheriff Lang levied this execution, or at least attempted to levy it upon a "mobile trailer home" occupied by Mr. Walker and his family as a home. This suit was brought by Clyde Walker and wife Hazel Walker, against Sheriff Lang and Capitol Aggregates, Inc., to permanently enjoin the levy of execution against the "mobile trailer home," the Walkers contending it was their homestead and exempt from execution under the Constitution and laws of this State. Trial to the court, without a jury, resulted in a judgment permanently enjoining the parties sued from levying or attempting to levy the execution on and from selling or attempting to sell the "mobile trailer home" of appellees. Only Capitol Aggregates, Inc., has appealed.

The trial court made and filed findings of fact and conclusions of law, those pertinent here being:

"2. Plaintiffs, Hazel Walker and Clyde Walker, sold their home on Fortview Road in Austin, Texas, sometime in the year 1968, took the proceeds therefrom and made a so-called 'down payment' on the purchase price of and did purchase and become the owners of what was frequently shorthandly referred to in the testimony as a 'trailer home.'

3. The 'trailer home' is an enclosed structure containing three bedrooms, one and one-half baths, a living room and a kitchen, and containing such other facilities sufficient to meet the domestic and physical needs of human beings who might abode therein.

4. As originally purchased by the plaintiffs, such structure had affixed to the underside thereof axles to which wheels were attached. By virtue of such attachment, said structure was then 'mobile' and 'movable' in the sense that, by the application of sufficient force, such as that generated by the power of an ordinary automobile, such structure could be moved from one place to another comparatively more easily than it could be dragged or if the invention of the wheel and axle were not among the devices of our modern technology.

5. At the time of such purchase of such structure, the plaintiffs then owned a leasehold estate in a lot of land situated in what was characterized in the testi-

mony as a 'trailer park' located at 1600–G Barton Springs Road in the City of Austin, Texas. Immediately after such purchase of such structure by the plaintiffs, they caused such structure to be moved to said lot in which they then owned such leasehold estate. There the plaintiffs caused said wheels to be removed from such structure and such structure to be set upon what was referred to in the testimony as 'cement blocks' on said lot. Such structure's gas, water and sewage facilities were connected to the gas, water and sewage systems located under the surface of and being a part of the aforesaid lot of land. The structure's electrical system was connected to the electrical service furnished as a part of said leasehold estate. By such setting on such blocks, the underside of said structure was held up from the actual surface of the soil of the earth a distance of approximately two feet. Although the plaintiffs did not themselves 'fasten' such structure to such blocks or soil, either by hairpin or steel cable embedded in concrete, I take judicial notice of the law of gravity and frictional adhesion and find that such structure was thereupon affixed by the plaintiffs to the lot of land in which they then held the aforesaid leasehold estate and that such structure was then, in all reasonable and practical sense of the terms, immovable and without mobility except by external application thereto of some great force such as that of a severe hurricane or powerful bulldozer.

6. I find that such affixation to said land by the plaintiffs was with the intention to enhance the usability of said leasehold estate in said land as the plaintiffs' home so long as the plaintiffs held said estate in said land.

7. I find that, except for some periods of time during which the plaintiff, Clyde Walker, was temporarily separated from Hazel Walker, the plaintiffs in fact have continuously from the time said structure was affixed as aforesaid to and including the date of trial, resided and aboded in such structure upon said land and have used, occupied and enjoyed said land and said structure thereon as a home for themselves and their family.

\*    \*    \*    \*    \*    \*

*Conclusions of Law:*

The plaintiffs' ownership interest in the aforesaid structure is an interest in a homestead within the meaning of Article 16, Sections 50 and 51, Constitution of the State of Texas, and Articles 3832 and 3833 of the Revised Civil Statutes of Texas, and therefore exempt from forced sale under execution."

■ Appellant's first point is that there was no evidence to support the finding of the trial court that the house trailer (mobile home) was affixed to the land.[1]

We do not believe we are required to recite all of the testimony bearing on and sustaining the finding of the court challenged here for the reason that, except perhaps as to the intent of appellees, appellant does not deny the factual findings of the court, but rather questions their legal effect.

Mr. Walker, who had been in the concrete business for many years, testified that the method used in placing his trailer on concrete blocks was the same as used by house movers who move and relocate entire houses. In some areas where hurricanes are common, mobile homes are bolted to the concrete blocks.

On cross examination, Mr. Walker testified:

"Q  Mr. Walker, had you been around trailer parks much before you moved into this one?

A  Not a great lot, no, sir. Just saw them and visited in one or two or three.

---

1. The substance of this point is also included in Point III B.

Q Do you know whether or not it might be a common practice to take wheels off and sell them and buy some more when you need them and then maybe sell those when you want to put the trailer down again and so forth?

A Well, I wouldn't know about that. That wasn't the reason we took ours off.

Q Well, you took yours off so that you could sell them, and you did, in fact, get some money for them, didn't you?

A We got a hundred dollars for them because we never intended to move the trailer. We didn't need them. We didn't want them."

Mr. L. Paul Meadows, Sr., who operated the trailer park where appellees' mobile home was located, testified:

"Q In the operation of your business there, do you have some people who come and park their mobile homes for a long period of time and some who come for very short periods of time?

A Well, frankly, I have one that's been there almost ten years and then some six and seven years, and on like that. Just comers and goers, I don't have, but the man next door has overnight parking. Small homes. Most of mine are comers and stayers."

We insert a picture of appellees' mobile home.

[A775]

To us, it seems, under this record, that the mobile trailer of appellees is as physically attached to the land as frame houses built on concrete blocks or cedar posts.

Regarding the intention of appellees in the matter, we take the following rules laid down in O'Neal v. Quilter, 111 Tex. 345, 234 S.W. 528, 529 (1921), as our guide:

"The controlling question in the case is, was it Quilter's intention, at the time he built the house on O'Neil's premises, that it should be a permanent accession to the freehold? This intention is to be ascertained from the facts and circumstances attendant upon the placing of the house there.

The principles governing the question are well expressed in Hutchins v. Masterson, 46 Texas [551] 554, 26 Am.Rep. 286, wherein the court says:

'The weight of the modern authorities establishes the doctrine that the true criterion for determining whether a chattel has become an immovable fixture consists in the united application of the following tests:

'1. Has there been a real or constructive annexation of the article in question to the realty?

'2. Was there a fitness or adaption of such article to the uses or purposes of the realty with which it is connected?

'3. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold; this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purpose or use for which the annexation is made.

'And of these three tests pre-eminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence of this intention.' See Moody v. Aiken, 50 Texas [65] 74; Willis & Bro. v. Morris, 66 Texas 628, 1 S.W. 799, 59 Am.Rep. 634; Jones v. Bull, 85 Texas 136, 19 S.W. 1031.

Quilter was a tenant at will. O'Neal had the authority and right to terminate his occupancy of the premises at any time. That fact, in the absence of an agreement to the contrary, is persuasive that the placing of the house thereon by Quilter was for his temporary use and benefit.

Looking to the intention of Quilter in building the box house on O'Neal's land, it is not to be presumed that it was his purpose to enhance the value of the freehold, his tenancy being indefinite and uncertain, and the building being of a nature which could be removed without injury to the land. The legal presumption is just to the contrary, that it was not his intention to enhance the value of the freehold, but to place the house there for his own use and benefit, and that it should retain its character as personalty. Cullers & Henry v. James, 66 Texas 494, 1 S.W. 314.

In discussing this same principle, Chief Justice Gaines, in the case of Wright v. MacDonnell, 88 Texas [140] 150, 30 S.W. [907] 911, uses the following language:

'Whether it is or is not the intention of the parties in any particular case to make them the property of the landlord is the very point to be determined. An intention on part of the tenant to surrender a valuable right ought not to be lightly implied, though such intention might be made manifest by the circumstances of the particular case.' "

■ The question of intention here, it being our opinion that there was legally sufficient evidence to support finding of fact 6, supra, was for the trier of the facts.

Appellant relies upon Gann v. Montgomery, 210 S.W.2d 255, Tex.Civ.App., Fort Worth, writ ref. n. r. e. (1948). In that case a house trailer in which the Ganns and their two children had lived for more than two years, they having no other home, was moved to Mexia where it was parked on property rented by Mr. Gann's parents, and with their permission to leave it there while Mr. Gann sought work. While the trailer was so located, Mr. Gann borrowed money, giving a chattel mortgage on the trailer as security. On default of the debt, suit was brought and judgment of debt and foreclosure was obtained. The Ganns brought suit to enjoin execution of the judgment of foreclosure, at which time the trailer had been moved to Fort Worth

Army Airfield in which, presumably, the Ganns had no private estate. The trial court denied relief and his judgment was affirmed.

We have no difficulty in distinguishing this case. Not only are the facts there not comparable with the facts here but the finding of the trier of the facts there was adverse to the claim of homestead, whereas it is favorable here.

See Clark v. Vitz, 190 S.W.2d 736, Tex. Civ.App., Dallas, writ ref. (1945), where the Court held that a trailer set on blocks and used for family purposes became a part of the homestead property on which it was located, the trailer and homestead being commonly owned, and was exempt from execution. Here, too, the findings of the trier of facts was favorable to the homestead claimant, and his judgment was affirmed.

Appellant also relies upon the definition of "house trailer" found in Art. 1436-1, Vernon's Tex.Penal Code as indicating legislative intent that a "house trailer" should always be a chattel. Sec. 2a of such Article provides:

"Sec. 2a. The term 'House Trailer' means a vehicle without automotive power designed for human habitation and for carrying persons and property upon its own structure and for being drawn by a motor vehicle."

■ We cannot agree that this definition of a "house trailer" has any bearing on the question of homestead. All homesteads, excluding the land, consist of an aggregation of chattels. It is their attachment to realty which gives them homestead character. See Vol. 28, Homesteads, Tex.Jur.2d, Sec. 10, p. 380.

While not of evidentiary value here, we quote from the August 20, 1969 issue of Investor's Reader as illustrative of the modern concept of mobile homes:

"On the other hand, mobile homes have not been very mobile for a good many years now. In fact, the chairman-president feels the term is a misnomer. 'Most mobile homes are so big it takes a truck to move them. Some 85% of the owners live in them on a permanent basis and 60% of the homes stay right at their original site.' The one key element of mobility is they are fully manufactured and equipped at a factory, then towed to their intended location, usually a trailer park."

We overrule Point I and complementary Point III B.

■ Point II is that there is no evidence to support finding that appellees held a leasehold estate in the Trailer Park, and Point III A is that a homestead depends upon an estate in land greater than appellees had in the land on which the house trailer was located. These points are closely related and will be discussed and determined together.

Appellees placed their trailer house in Trailer Park under a verbal month to month rental agreement with the operator of the Park, the landlord, Mr. L. Paul Meadows, Sr. When this case was heard on petition for a temporary injunction, Mr. Meadows testified that he had given appellees notice that their tenancy would terminate the next day. However, Mr. Meadows and appellees entered into an agreement that appellees would be permitted to remain in the space occupied by them pending termination of this litigation conditioned upon their prompt payment of rent, other charges and abiding by the rules of the park.

■ It is our opinion that a month to month tenancy is a sufficient interest in realty to sustain a homestead claim. Appellant cites, Hampton v. Gilliland, 23 Tex. Civ.App. 87, 56 S.W. 572, Tex.Civ.App., Galveston, no writ (1900); Ellis v. Bingham, 150 S.W. 602, Tex.Civ.App., Texarkana, no writ (1912) and Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626 (1941) as indicating a contrary conclusion.

The facts in Hampton are complicated, but as we understand them the homestead claimant had no right to occupy the residence on the farm in question except as tenant of his mother who owned a life estate therein. Such right of occupancy and possession did not accrue during the lifetime of the claimant, he having only a remainderman's estate therein, and no homestead right passed to his widow on his death. It is well settled that a remainderman cannot have a homestead interest in the property so long as the prior estate is undetermined. Homesteads, Vol. 28, Tex.Jur.2d, Sec. 54, p. 437. This case is not helpful here. Appellees owned the trailer and had the right of immediate occupancy and possession of it.

Ellis involved an execution on ungathered crops. The Court held the execution should not be enjoined for the reason that the claimant's possession of the premises was incidental to his work in making the crop and would not support a homestead claim.

Greene, too, has complicated facts. We are referred to a statement by the Court that a man and wife living on land and claiming it by adverse possession but, prior to perfecting limitation title "could have no homestead right or interest in land to which they had no title." In such case the claimant would not have the right of possession or title and there would be nothing to which a claim of homestead could attach.

There are many authorities holding that a possessory interest in a lot or lots is sufficient to support a claim of homestead, the other requisites being present. See Homesteads, Vol. 28, Tex.Jur.2d, Sec. 58, p. 443.

We believe the best statement of the law in this respect and under facts closely analogous to those present here is found in First National Bank of Kaufman v. Dismukes, 241 S.W. 199, Tex.Civ.App., Texarkana, no writ (1922), from which we quote:

"The only question presented on the appeal is that of whether or not a homestead will attach to a business house or 'warehouse' that is constructed on leased premises. In point of fact the warehouse' was used by the husband, as the head of a family, as a place to exercise his business, at the time and since the deed of trust was made and filed. As the homestead right or privilege is of constitutional creation, its nature, character and extent depend upon the law creating and defining it. 'The homestead in a city, town or village,' as defined by the Constitution of this state—

'shall consist of * * * a lot or lots not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, the temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired.' Const. art. 16, § 51; article 3786, Complete Stat. of 1920.

Ownership of the fee in the 'lot or lots' is not, by any terms of the law, essential to the existence of the homestead. The only limitation of the law is as to value and the use of the property. While the law is in terms of 'lot or lots' of land, yet the object was to secure to the family a place of family residence and a place for the head of the family to actually exercise his calling or business to support the family. A 'house' is necessarily embraced in the word 'homestead.' Franklin v. Coffee, 18 Tex. 413, 70 Am.Dec. 292; Cullers v. James, 66 Tex. 494, 1 S.W. 314. As stated in this latter case:

'If the head of a family owns a house and no interest or estate in the land on which it stands, the house is a chattel. If he occupies it with his family, it is

their home. He may be compelled to move it from one lot to another as fast as legal process can oust him, still, though ambulatory, unsatisfactory, and in all its appointments mean; though it advertises the thriftless poverty of its proprietors, and is a caricature of the princely possibility of the exemption laws, it is the home of a family, and is embraced in the spirit and purpose, if not the letter, of the Constitution. The same principles under our present Constitution must be applied to the place of business of the head of the family.'

Hence, giving effect to the plain intent of the Homestead Act, any possessory interest in a lot or lots, the fee-simple title not being required to support it, coupled with the requisite occupancy by the husband and his family, is sufficient to support a homestead claim. Consequently, if any possessory interest in the lot or lots less than the fee-simple title is sufficient to entitle a claimant to the benefits of the provisions of the Homestead Act, it follows logically that the homestead right and privilege attaches to a tenement or building, coupled with the requisite occupancy, erected upon leased or rented premises. Cullers v. James, supra; Low v. Tandy, 70 Tex. 745, 8 S.W. 620; Phillips v. Warner (Tex.Sup.) 16 S.W. 423; [Anheuser-Busch] Brewing Ass'n v. Smith (Tex. Civ.App) 26 S.W. 94; Ellis v. Bingham (Tex.Civ.App.) 150 S.W. 602.

It does not appear, it is true, in the record the kind of lease, or duration of the same, that appellee has in the land. An exclusive, uninterrupted possession of the premises does appear. That is sufficient as against a judgment creditor. Where a head of a family is in the exclusive possession, as here, of a lot of land actually occupied by him as a business homestead, it does not concern the judgment creditor whether such claimant possesses a lease for a long term of years or of less duration."

This case has been cited many times with approval. We follow it and hold that the possessory interest held by appellees in the lot to which their trailer house was affixed is sufficient to support a claim of homestead in the trailer house of appellees, all other requisites of a homestead being present. We overrule the points under discussion.

Finding no error, the judgment of the trial court is affirmed.