MINNEHOMA FINANCIAL
COMPANY, Appellant,

v.

James V. DITTO, Appellee.

No. 17949.

Court of Civil Appeals of Texas,
Fort Worth.

May 4, 1978.

Rehearing Denied June 1, 1978.

Simon & Simon, and Sheldon Anisman, Fort Worth, for appellant.

Anderson, Martin, Rodriguez & Anderson, and Carol Campbell, Wichita Falls, for appellee.

## OPINION

HUGHES, Justice.

As owner and holder of a retail installment contract and security agreement dated November 1, 1973, Minnehoma Financial Company obtained a judgment against James V. Ditto for $8,912.74, admittedly due thereon, plus contractual attorneys' fees of $1,336.91 and costs. The contract was secured by a lien on a mobile home purchased by Ditto. The trial court denied sequestration of the mobile home and refused to recognize and order foreclosure of Minnehoma's lien upon it. Minnehoma has limited the scope of its appeal under Tex.R. Civ.P. 353 to the issue of the trial court's failure to order foreclosure of the lien. The question presented is whether Minnehoma's lien to secure the purchase money of the mobile home is for an improvement to a homestead so as to require the signature of both spouses under Tex.Const. art. XVI, § 50 (Supp.1978) and Tex.Rev.Civ.Stat.Ann. art. 5460 (Supp.1978).

We reverse and render judgment for Minnehoma.

Minnehoma owned a 1972 Gold Crest mobile home which it consigned to Interstate Housing Corporation. On June 18, 1973, Ditto and Interstate entered into a conditional sales agreement on the mobile home. Under the contract the title was not to pass until all of the purchase price was paid. Interstate retained the right to repossess and sell the mobile home, if necessary, and to apply the proceeds to the amount due. Ditto paid Interstate $6,180.00 on the mobile home. The total purchase price was $11,180.00, the balance being due within ninety days.

There was testimony that Interstate did not disclose this transaction to Minnehoma at that time and that had disclosure been made, Minnehoma would have demanded payment in full of the invoice amount. When Ditto was unable to pay the balance due, Interstate and Ditto arranged financing with Minnehoma. On November 1, 1973, Interstate and Ditto executed a retail installment contract and security agreement. The contract was assigned to Minnehoma.

Under the November contract the cash sale price was $13,062.40 with a deferred payment price of $22,970.40. Payments were to be made over a 144-month period. Title was not to pass until all payments had been made. In the event of default, provision was also made for repossession and sale.

Ditto defaulted. It is admitted that Minnehoma is the owner and holder of the November 1, 1973 retail installment contract and security agreement. It is also admitted that the amount due thereunder is $8,912.74 plus attorneys' fees. The testimony reflects that this amount represents the outstanding balance of $16,178.72, less a rebate of $7,265.98, or the amount necessary to pay the contract off as of October 31, 1974.

Ditto's wife, Joynell Ditto, did not sign either the conditional sales contract of June

18th or the retail installment contract of November 1st. Neither contract purported to create a lien on the land itself.

It is undisputed that the mobile home was delivered and attached by Interstate to Ditto's property in late June 1973 after the first contract was signed. The wheels were removed, and it was placed on concrete blocks and anchored with eight-foot buried anchors. The mobile home has plumbing and electricity. There was testimony that it may be removed without substantial damage to the realty or to the mobile home itself.

A certificate of title on the mobile home was issued on January 14, 1974, and given to Ditto with Minnehoma's lien noted thereon.

The jury made the following findings: The mobile home was attached to the reality in a manner to indicate the intention that it be a permanent part of Ditto's real estate, and on or before November 1, 1973, the realty to which it was attached constituted Ditto's homestead. All parties intended that the November 1, 1973 agreement take the place of the agreement of June 18, 1973. The money or consideration advanced by Minnehoma was for the purchase money of the mobile home. Minnehoma was not the seller and had acquired the November contract in good faith and for value. The cash sale price in the June contract was $11,180.00 and in the November contract, $13,062.40. The difference was the result of a bona fide error between Ditto and Interstate.

Minnehoma's points of error are that the trial court erred in: (1) Refusing to order foreclosure of its alleged first lien; (2) Submitting certain special issues over the objection that the issue of whether or not the mobile home was attached to what later could be classified as Ditto's homestead was immaterial; (3) Failing to uphold and foreclose Minnehoma's purchase money lien on the mobile home which, as a matter of law, is superior to any homestead exemption claimed by Ditto; and (4) Failing to uphold and foreclose Minnehoma's lien because Ditto did not show title sufficient to support a homestead exemption in the mobile home and because Minnehoma proved an express lien under both contracts and the Certificate of Title Act, Tex.Rev.Civ.Stat.Ann. art. 6687–1 et seq. (1977) as well as an implied and equitable lien.

Ditto's counsel argues that the major issue is whether the mobile home was an improvement to a homestead so as to require the wife's signature in order to create a lien on the mobile home. Ditto's counsel concedes in her brief that Minnehoma has an express lien under both the June and November contracts and the Certificate of Title Act, but argues that the express lien claim is "inferior to the homestead exemption and invalid unless the constitutional requirements for establishing . . . improvement liens are met . . . ." Ditto's position is that Interstate did not perfect a valid lien on the mobile home because it did not obtain Mrs. Ditto's signature on the June contract even though it should have been on notice that it was to be attached to homestead. Ditto also argues that Minnehoma's lien under the November contract was likewise invalid because Mrs. Ditto's signature was not obtained even though the mobile home was thus clearly an improvement to homestead at that time. Finally, Ditto urges that Minnehoma's lien claim under the Certificate of Title Act is also inferior to the homestead claim in the absence of the wife's signature.

Minnehoma argues that it has a purchase money lien protected by Tex.Const. art. XVI, § 50 (Supp.1978) and that Ditto could have no homestead interest in the mobile home before he had completed the transaction to acquire it. Minnehoma emphasizes that it was only the acquisition of the mobile home and its attachment to the realty which permitted Ditto to make a homestead claim at all.

Tex.Const. art. XVI, § 50 (Supp.1978) provides:

"The homestead of a family . . . shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes

due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead . . .. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided . . .."

■ We agree with Ditto that a mobile home may be deemed an improvement to the realty when attached to the realty in a manner indicating an intention that it be a permanent part of the real estate. See *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977) (dissenting opinion). The nature of a mobile home does not preclude its being given homestead protection. If a mobile home is attached in such a manner to a homestead, it is entitled to homestead protection. *Capitol Aggregates, Inc. v. Walker*, 448 S.W.2d 830 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.); *Gann v. Montogomery*, 210 S.W.2d 255 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n. r. e.) (concurring opinion); *Clark v. Vitz*, 190 S.W.2d 736 (Tex.Civ.App.—Dallas 1945, writ ref'd.)

But in this case there is the further question of whether the lien is on the homestead.

As against non-purchase money lienholders, Ditto would have a homestead interest in the mobile home. Also, assuming the land itself were homestead prior to June 18, 1973, Minnehoma could not have placed a valid lien on the land in order to secure the purchase money of the mobile home unless the signatures of both spouses were obtained.

But in this instance Minnehoma's lien under both contracts is only on the mobile home. Ditto argues that this is a lien on the homestead, and his only basis for contesting the validity of the liens under the two contracts is the absence of the wife's signature. Ditto argues that the November contract may not be viewed as a readjustment of the June lien claim because there was no valid lien claim under the June contract in the absence of the wife's signature. Under Ditto's theory the November lien claim is, therefore, invalid because the wife's signature was not obtained on the November contract.

■ We agree with Minnehoma that the June contract did not require the wife's signature. We also agree that the November contract must be viewed as a readjustment of the original obligation and therefore was not subject to the requirement of both signatures, either. The homestead laws are not to be construed so as to destroy pre-existing rights. *Gage v. Neblett*, 57 Tex. 374 (1882). As against the purchase money lienholder, the mobile home did not become part of the homestead, until the purchase price was paid. The lien on the mobile home is thus not a lien on the homestead, and both signatures were not required. As against a purchase money lienholder the requirement that the signatures of both spouses be obtained extends only to the creation of a lien on what was already homestead at the time of the transaction. *Hartell v. Tulsa Rig, Reel & Manufacturing Co.*, 64 S.W.2d 804 (Tex.Civ.App.—Amarillo 1933, no writ).

■ The requirement that the signatures of both spouses be obtained is intended to protect a spouse from possible loss of existing homestead rights without his consent. *Andres v. Security Nat. Bank of Wichita Falls*, 121 Tex. 409, 50 S.W.2d 253 (1932). Mrs. Ditto's rights in the land were in no way affected by the creation of a lien on the mobile home.

The following cases on which Ditto relies are inapplicable because they involve liens on the existing homestead for improvements thereto: *Kepley v. Zachry*, 131 Tex. 554, 116 S.W.2d 699, supplemented at 131 Tex. 561, 121 S.W.2d 595 (Tex.Comm'n App. 1938, opinion adopted); *Andrews v. Security Nat. Bank of Wichita Falls*, supra; and *Lyon v. Ozee*, 66 Tex. 95, 17 S.W. 405 (1886).

■ Ditto also relies on *Sweet v. Lyon*, 39 Tex.Civ.App. 450, 88 S.W. 384 (1905, writ

denied). Ditto argues that the lien in the instant case "is not in the legal sense a purchase money lien on the homestead" because " 'purchase money' refers only to the realty and any improvements existing thereon at the time of first purchasing the homestead." As we see it, that argument is irrelevant because the lien for the improvement is not on the existing homestead, but rather is on the mobile home which was later attached to the homestead. We do not think it significant that Interstate may have had notice that the mobile home was to be attached to Ditto's land. There is a crucial distinction between an improvement lien on the homestead requiring two signatures and a purchase money lien which does not: In the case of a purchase money lien, the lien *for* purchase money is *on* the property purchased, and both signatures are not required. An improvement lien requiring both signatures is one which is *for* an improvement but is *on* the existing homestead.

Accordingly, we sustain Minnehoma's points of error except as to the alternative implied or equitable lien theory which is unnecessary for us to reach.

Minnehoma sought, both at trial and on appeal, to obtain possession and title to the mobile home, but the judgment it obtained against Ditto under the November contract, is only for $8,912.74 plus attorneys' fees. Minnehoma cannot have an enforceable lien claim for more than that amount.

There is an additional question concerning the extent of Minnehoma's enforceable lien claim in view of the fact that the second contract had a higher cash sale price as well as a deferred payment price. As already noted, the jury found that the difference in the cash sale price under the two contracts was the result of a bona fide error between Ditto and Interstate.

In light of the jury's finding, we hold that Minnehoma has an enforceable lien claim against the mobile home for $8,912.74 plus attorneys' fees of $1,336.91 and costs, this being the amount due under the November contract, as awarded by the trial court.

"The head of the family, being charged with the responsibility of discharging the encumbrance and thus preserving the homestead, must necessarily have the right to renew, rearrange, and readjust the encumbering obligation; otherwise he might lose the homestead through foreclosure proceedings, and the very purpose of the constitutional inhibition against encumbering the homestead be defeated. In accomplishing this purpose he may change the form of the obligation so long as he acts in good faith and does not intentionally increase the burden on the homestead for purposes other than are necessary for the readjustment of the outstanding obligation." *Machicek v. Barcak*, 141 Tex. 165, 170 S.W.2d 715, 717 (1943).

This appeal having been limited to the trial court's failure to recognize and order foreclosure of Minnehoma's lien, we reverse the trial court as to that portion only and here render judgment for Minnehoma recognizing and ordering foreclosure of its lien against the mobile home for $8,912.74 plus attorneys' fees of $1,336.91 and costs. Upon foreclosure, the proceeds from the sale are to be credited against the judgment of $8,912.74 plus attorneys' fees of $1,336.91 and costs, which Minnehoma obtained against Ditto below.