**Thomas Eugene NORRIS, Sr.
and Karen Lynn Norris,
Appellants,**

v.

**Johnny W. THOMAS, Trustee, Appellee.**

No. 05–0476.

Supreme Court of Texas.

Argued Nov. 15, 2005.

Decided Feb. 9, 2007.

Melvin R. Blumberg, San Antonio, for Appellants.

Johnny W. Thomas, Law Office of Johnny W. Thomas, San Antonio, for Appellee.

Justice WILLETT delivered the opinion of the Court, joined by Chief Justice JEFFERSON, Justice HECHT, Justice GREEN, and Justice JOHNSON.

We confront today a question of first impression: whether a boat qualifies as a homestead under article XVI, sections 50 and 51 of the Texas Constitution. Since 1845, our state constitution has protected a homestead from forced sale to satisfy the claims of creditors.[1] Thomas Norris claimed his 68–foot yacht as a homestead to shield it from bankruptcy creditors, prompting the United States Court of Appeals for the Fifth Circuit to certify this question to us: "Does a motorized waterborne vessel, used as a primary residence and otherwise fulfilling all of the requirements of a homestead except attachment to land, qualify for the homestead exemption under Article 16, §§ 50 and 51 of the Texas Constitution?"[2] Under the facts presented in this case, and given the Constitution's explicit realty-based language, we answer the question, "No."

## I. Background

In September 2003, Norris filed a voluntary bankruptcy petition under Chapter 7 of the United States Bankruptcy Code[3] Under the Code a debtor may claim a homestead exemption as allowed by state law.[4] Norris claimed his 68–foot yacht as exempt property under the Texas homestead exemption. The boat, which Norris valued at $399,000 in his bankruptcy schedules, has four bedrooms, three bathrooms, a galley, and an upper and lower salon. Although his petition indicated that his street address was 13909 Nacogdoches Road, San Antonio, Texas, Norris testified at a January 2004 bankruptcy court hearing that the address is a business postal center where the Norrises receive mail. Norris further stated that he took up permanent residence on the boat after the Norrises sold their previous home in Lake

---

1. Tex. Const. of 1845, art. VII, § 22.

2. 413 F.3d 526, 530.

3. See 11 U.S.C. §§ 301, 701–84.

4. See id. at § 522.

McQueeny, Texas, in 2000, and that the boat is his only home. Norris's attorney stated at the hearing that "primarily, [Norris] lives on that boat while it's dry-docked" at Corpus Christi, and that the boat received water, phone service, and electricity through connections to a dock. Norris also testified at the hearing that since purchasing the boat in 1997 he had cruised extensively to places such as New Orleans, Florida, and Alabama. At the time the bankruptcy petition was filed in September 2003, the boat was docked in Port Aransas, Texas. Norris testified at the January 2004 hearing that he had moved the boat to a marina in Corpus Christi, Texas, where he had a month-to-month lease. Although the boat is described in the record as "dry-docked," there is no indication that Norris ever permanently affixed the boat to real estate or intended to do so.

The bankruptcy court held that the Texas homestead exemption, even broadly construed, does not include boats. The federal district court agreed, concluding that the boat was a movable chattel "by virtue of its self-powered mobility" and not entitled to homestead protection.[5] Norris

appealed to the Fifth Circuit, which certified the question to this Court.

## II. Discussion

■ We construe homestead laws generously;[6] however, courts cannot unduly stretch the homestead laws beyond their constitutional and statutory moorings and protect that which is not a homestead.[7]

### A. Texas Constitutional and Statutory Provisions

Neither the Texas Constitution nor the Property Code defines "homestead" with specificity. Section 50 of article XVI shields homesteads from forced sale, providing generally that "[t]he homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts...."[8] Section 51, in turn, restricts the maximum size of a protected homestead, limiting rural and urban homesteads by acres of land and including any land-based improvements.[9] The Texas Property Code resembles section 51 and likewise describes a homestead as a home or a home and business with certain acreage limitations with any "improvements thereon."[10] Though neither

---

5. 316 B.R. 246, 251 (W.D.Tex.2004).

6. *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex.1987).

7. *Whiteman v. Burkey*, 115 Tex. 400, 282 S.W. 788, 789 (1926).

8. TEX. CONST. art. XVI, § 50.

9. TEX. CONST. art. XVI, § 51. Section 51 states in pertinent part:

 The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements *thereon*; the homestead in a city, town or village, shall consist of lot or contiguous lots amounting to not more than 10 acres of land, together with any improvements *on the land*; provided, that the homestead in a

city, town or village shall be used for the purposes of a home, or as both an urban home and a place to exercise a calling or business, of the homestead claimant....
(Emphasis added).

10. The Property Code recognizes a general homestead exemption from creditors, TEX. PROP. CODE § 41.001(a), and defines homestead as follows:

 (a) If used for the purposes of an urban home or as both an urban home and a place to exercise a calling or business, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than 10 acres of land which may be in one or more contiguous lots, together with any improvements *thereon*.
 (b) If used for the purposes of a rural home, the homestead shall consist of:

of these provisions expressly exclude boats from homestead protection, they both discuss homesteads in terms of land and any improvements that sit atop the land.[11] More specifically, when describing the scope of the protection, section 51 and the Property Code state the acreage limitation and then variably say, when describing any attached structures, "with the improvements thereon" or "with any improvements on the land" or "with any improvements thereon."

## B. Precedent

Texas's strong pro-homestead tradition pre-dates statehood, and the Republic of Texas was determined to protect homesteads from creditors.[12] In 1886, roughly a half-century after Texas homestead laws originated,[13] we opined on their reach and limits. In *Cullers v. James*, we held that a house may be a homestead even if the owner has no proprietary interest in the land on which the house stands.[14] The James family leased a three—or four-acre tract of land from Robert Walker (though the property was actually Walker's wife's separate property).[15] The land contained improvements such as a house, a gin-house, gin machinery, and a mill that were "so fixed as to make [them] part of the land."[16] But since James had no interest in the land,[17] the Court viewed the improvements as personal property instead of realty.[18] Nonetheless, the Court held that the house and gin-house qualified as a homestead.[19]

■■■ *Cullers* established that a house can be a homestead even if the owner has no ownership interest in the land. It also made clear that the term "improvements" as protected by article XVI, section 51 includes the residence itself. In the 121 years since *Cullers*, we have defined improvements to real property with greater precision, distinguishing them from mere

> (1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements *thereon;* or
> (2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements *thereon.*
> (c) A homestead is considered to be urban if, at the time the designation is made, the property is:
> (1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and
> (2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality:
> (A) electric;
> (B) natural gas;
> (C) sewer;
> (D) storm sewer; and
> (E) water.
> (d) The definition of a homestead as provided in this section applies to all homesteads in this state whenever created.

Tex Prop.Code § 41.002 (emphasis added).

11. Two other constitutional provisions create limited exemptions from State taxes for "residential homesteads" and "residence homesteads," *see* TEX. CONST. art. VIII, §§ 1–a, 1–b, but neither provision defines the term.

12. *See Woods v. Alvarado State Bank*, 118 Tex. 586, 19 S.W.2d 35, 36–37 (1929) (discussing history of the Texas homestead exemption).

13. Texas' first homestead law was an 1839 act of the Congress of the Republic of Texas. *Id.* at 36.

14. 66 Tex. 494, 1 S.W. 314, 315 (1886).

15. *Id.* at 314–15.

16. *Id.* at 315.

17. The Court was unsure if James had a valid lease because the owner of the land, Mrs. Walker, never expressly agreed to the lease. *Id.* at 314–15.

18. *Id.* at 315.

19. *Id.*

personalty, and holding that "personalty does not constitute an improvement until it is annexed to realty." [20] This Court put it plainly in *Sonnier v. Chisholm–Ryder Co.*: "There can be no improvement without annexation to realty, and until personalty is annexed to realty, it by definition cannot be an improvement." [21] Not only that, but the annexed object cannot be deemed an improvement to land unless it is intended to be "a permanent addition to the realty." [22]

■ Since *Cullers*, the courts of appeals have issued several homestead-related opinions that bear more directly on today's issue, and they share a common thread: homestead protection turns not on who owns the underlying land, but on the degree to which the residence "thereon" or "on the land" is attached to it. This Court reviewed four of these pertinent cases, refusing the writ in the first and finding no reversible error in the others. We continue to believe that their attachment-based analysis is correct.

In *Clark v. Vitz*, Vitz built a "house-trailer" that his family used as its primary residence for two years. [23] He later purchased a lot with a brick house, placed the house trailer twenty-five feet from the house, and set the trailer on four wooden blocks. [24] Vitz ran electrical service to the house trailer from the residence and planned to connect the trailer to the residence's plumbing. [25] The court held that Vitz's attachment of the house-trailer to his residence made the trailer part of the homestead. [26]

In *Gann v. Montgomery*, the Ganns owned a "house trailer, mounted on wheels, of the type usually pulled behind an automobile." [27] After a few years, the Ganns moved the trailer to Mr. Gann's parents' backyard. [28] Gann executed a promissory note secured by a chattel mortgage on the trailer. [29] Gann then entered the United States Army and was stationed at the Fort Worth Army Airfield. [30] His family still lived in the trailer, now parked at the airfield and still on wheels. [31] The mortgage holder brought suit to foreclose on the chattel mortgage lien. [32] The court, citing *Cullers*, noted the distinction between a chattel that is attached to realty and a chattel that is not. [33] After quoting from *Cullers*, the court said:

> Taken alone, this language might indicate a belief by the Supreme Court that the homestead exemption could attach to any chattel, such as a covered wagon, or a houseboat, or any other type of movable vehicle or conveyance, which for the time being might be occupied by the claimant and his family as living quarters. But when we examine the opinion in the light of the facts of the case, and

20. *Sonnier v. Chisholm–Ryder Co.*, 909 S.W.2d 475, 479 (Tex.1995).

21. *Id.*

22. *Id.* at 481 (emphasis added).

23. 190 S.W.2d 736, 737 (Tex.Civ.App.-Dallas 1945, writ ref'd).

24. *Id.*

25. *Id.*

26. *Id.* at 738.

27. 210 S.W.2d 255, 256 (Tex.Civ.App.-Fort Worth 1948, writ ref'd n.r.e.).

28. *Id.* at 257.

29. *Id.*

30. *Id.*

31. *Id.*

32. *Id.*

33. *Id.* at 259.

consider the disposition made of the entire case, we come to a different conclusion.[34]

The court then noted the distinction between personal property—such as the gin machinery in *Cullers*—and a permanent fixture attached to realty that is personal property only because the owner of the fixture does not own the land.[35] The court cited *Clark* as consistent with this dichotomy in that the house trailer was only a homestead because it had been attached to the realty and set alongside the house, essentially becoming an extra room.[36] The court held that house trailers without the characteristics of permanent fixtures attached to realty are not protected homesteads.[37]

In *Capitol Aggregates, Inc. v. Walker,* the Walkers owned a "mobile trailer home" connected to the gas, water, and sewage systems of a trailer park.[38] They removed the wheels and set the house on cement blocks.[39] The court found it persuasive that the house was "as physically attached to the land as frame houses" and held that the trailer house was a homestead.[40]

Finally, in *Minnehoma Financial Co. v. Ditto,* Ditto purchased a "mobile home."[41] He attached the mobile home to his property by removing the wheels, placing it on concrete blocks secured by eight-foot buried anchors, and connecting it to electricity and water.[42] The court held that the mobile home was a homestead:

> We agree with Ditto that a mobile home may be deemed an improvement to the realty when attached to the realty in a manner indicating an intention that it be a permanent part of the real estate. The nature of a mobile home does not preclude its being given homestead protection. If a mobile home is attached in such a manner to a homestead, it is entitled to homestead protection.[43]

Nonetheless, the court held that the trailer home was not protected because a lien attached before the mobile home became part of Ditto's homestead.[44]

## C. Application

 Applying these precedents to the instant facts, we agree that the proper test for whether a residence attains homestead status is whether the attachment to land is sufficient to make the personal property a permanent part of the realty. Significantly, both the Constitution and the Property Code use the word "thereon" when describing any protected homestead improvements;[45] the Constitution also stipulates "on the land," which is plainly not the same as "in the water."

 As we said in *Cullers,* "The greater part of [the personal property] was . . . so

---

34. *Id.*

35. *Id.* at 259–60.

36. *Id.* at 260.

37. *Id.*

38. 448 S.W.2d 830, 831–32 (Tex.Civ.App.-Austin 1969, writ ref'd n.r.e.).

39. *Id.* at 832.

40. *Id.* at 833, 837.

41. 566 S.W.2d 354, 355 (Tex.Civ.App.-Ft. Worth 1978, writ ref'd n.r.e.).

42. *Id.* at 356.

43. *Id.* at 357 (citations omitted).

44. *Id.*

45. Black's Law Dictionary defines "thereon" as "On that or them." BLACK'S LAW DICTIONARY 1517 (8th ed.2004).

fixed as to make it part of the land...."[46] Ninety-two years later, the Ditto court held "a mobile home may be deemed an improvement to the realty when attached to the realty in a manner indicating an intention that it be a permanent part of the real estate."[47] The *Gann* court similarly reasoned "the homestead right may attach to a chattel if it has been annexed to the freehold so as to have become a fixture and to have acquired the character of realty."[48] Movable chattels do not possess the characteristics of a fixture attached to real property and do not acquire the character of realty. As the *Walker* court put it, "[i]t is their attachment to realty which gives them homestead character."[49]

In *Clark*, setting a trailer home on four wooden blocks and connecting it to electrical service was sufficient to attach the trailer to real property.[50] In *Gann*, where the house trailer remained on wheels, merely parking the movable trailer on real property was insufficient to attach the trailer to the property.[51] In *Walker*, removing the wheels of a mobile trailer home, setting it on cement blocks, and connecting it to water, sewer, and gas service was sufficient to attach the mobile trailer to real property.[52] And in *Ditto*, removing the wheels of a mobile home, setting it on concrete blocks with eight-foot buried anchors, and connecting it to electrical and plumbing service was sufficient to give it homestead protection.[53]

In the pending case, although Norris's dock-based connections to utilities and plumbing are like the land-based utility connections in *Clark*, *Walker*, and *Ditto*, a boat is sufficiently distinct from a mobile home or house trailer to justify a different outcome, particularly given the Constitution's unequivocal requirement that protected improvements be on the land. Norris's boat, unlike a dwelling that is permanently affixed to land, retains its independent, mobile character even when attached to dock-based amenities because it has self-contained utility and plumbing systems and also boasts its own propulsion.[54] Norris, in fact, admits to traveling in the boat extensively throughout the Gulf of Mexico prior to filing for bankruptcy, and he moved the boat from Port Aransas to Corpus Christi after the bankruptcy filing. *Gann* was the only case where parties moved their home and still sought homestead protection, which the court denied.[55] Though Norris took steps to tether the boat to realty, these steps do not sufficiently alter the boat's mobile character or, apparently, prevent Norris from cruising. We hold that Norris's boat remains a movable chattel; it does not rest "thereon" or "on the land" as Texas homestead law clearly requires; it has not become a permanent part of the real estate; and it has not sufficiently attached to real property to merit homestead protection.[56] In our view, the

---

46. 1 S.W. at 315.

47. 566 S.W.2d at 357.

48. 210 S.W.2d at 258.

49. 448 S.W.2d at 835.

50. 190 S.W.2d at 737–38.

51. 210 S.W.2d at 257, 260.

52. 448 S.W.2d at 832, 837.

53. 566 S.W.2d at 356–57.

54. *See Gann*, 210 S.W.2d at 259 (indicating that homestead protection should not attach to "a covered wagon, or a houseboat, or any other type of movable vehicle or conveyance").

55. *Id.*

56. *See Ditto*, 566 S.W.2d at 357; *Gann*, 210 S.W.2d at 260 (noting that a house is a homestead only if it is "a permanent fixture attached to the realty").

homestead exemption from creditors found in the Constitution and the Property Code contemplates a requisite degree of physical permanency and attachment to fixed realty—"thereon" and "on the land" constitute the operative language—that is not present in the pending case.

The dissent bemoans the Court's "cramped interpretation" and urges a more "family-supportive 'homestead' concept" that the Legislature and at least one executive agency have embraced in other areas of Texas law.[57] The Tax Code, for example, specifically includes mobile homes in its definition of "residence homestead" and more generally employs a looser definition that essentially focuses on whether the structure is owned and occupied as a principal residence.[58] In addition, state regulations that determine eligibility for certain welfare-related programs define "homestead" expansively to include "[a]ny structure, including a houseboat or motor home, that the household uses as its residence...."[59] The dissent, while conceding that these context-specific provisions do not govern the instant dispute, argues these more protective provisions counsel a more "functional approach."[60]

We believe these provisions cut the other way, demonstrating if anything that policymakers are adept at adopting different definitions for different purposes. The Legislature is certainly free to put a proposed amendment before Texas voters to delete "thereon" and "on the land" and expand our Constitution's current land-based homestead exemption to cover boats explicitly.[61] Indeed, amending the Texas Constitution is no Sisyphean task, having been done 439 times since its adoption in 1876, making our Constitution one of the nation's longest.[62] But the authority to overhaul Texas homestead law and shield boats from bankruptcy creditors is not ours.[63] This is a quintessential policy judgment, and our confined role is determining what Texas law is, not what it should be. If houseboat-homesteads are in Texas's future, it should be because Texas voters have amended our laws to say so, not this Court.[64]

57. 215 S.W.3d 851, 861.

58. Tex. Tax Code § 11.13(j)(1).

59. 1 Tex. Admin. Code § 372.356(5).

60. 215 S.W.3d at 861.

61. See, e.g., Miller v. Keyser, 90 S.W.3d 712, 719 (Tex.2002).

62. Legislative Reference Library of Texas, Constitutional Amendments (Feb.2006), http://www.lrl.state.tx.us/legis/constAmends/lrlhome.cfm.

63. See Whiteman v. Burkey, 115 Tex. 400, 282 S.W. 788, 788 (1926) ("There are no exemptions except those provided by law."); Gann, 210 S.W.2d at 260 ("[T]he courts cannot protect that which is not a homestead.").

64. Texas law dictates today's result, but given the dearth of boat-as-homestead cases in Texas, it is illustrative to study court decisions applying other states' homestead laws. Federal bankruptcy courts applying the laws of other states have extended homestead protection to houseboats, but these decisions all turn on distinct constitutional and statutory language that expressly grants homestead protection for "personal property" or "mobile homes" or similar dwellings. In In re Mead, a Florida bankruptcy court held that a houseboat was a homestead under a Florida statute that defined a homestead as "any dwelling house, including a mobile home used as a residence." 255 B.R. 80, 83, 85 (Bankr. S.D.Fla.2000). Not surprisingly, this issue has arisen frequently under Florida law, and we refer the reader to Mead and the following cases but do not attempt to reconcile them with each other or our own case law, other than to note that Florida statutory law is different from our own. See In re Walter, 230 B.R. 200, 203 (Bankr.S.D.Fla.1999) (holding that a houseboat was not a homestead under Florida law because it was "a navigable vehi-

## III. Conclusion

Unless and until Texas law changes, a boat can be a home, but it cannot be a homestead. Our realty-focused constitution and laws frame a homestead in terms of tracts, parcels, acres, and lots together with any land-based improvements.

In order to qualify as a homestead, a residence must rest on the land and have a requisite degree of physical permanency, immobility, and attachment to fixed realty. A dock-based umbilical cord providing water, electricity, and phone service may help make a boat habitable, but the attachment to land is too slight to warrant homestead protection.

Accordingly, Norris's yacht does not qualify as an exempt homestead under article XVI, sections 50 and 51 of the Texas Constitution, and we answer the certified question, "No."

Justice O'NEILL delivered a dissenting opinion, joined by Justice WAINWRIGHT, Justice BRISTER, and Justice MEDINA.

Justice O'NEILL, joined by Justice WAINWRIGHT, Justice BRISTER, and Justice MEDINA, dissenting.

Texas homestead laws protect the homes of Texas families, a principle firmly embedded in our jurisprudence. TEX. CONST. art. XVI, §§ 50–51; *Woods v. Alvarado State Bank*, 118 Tex. 586, 19 S.W.2d 35 (1929); *Clark v. Vitz*, 190 S.W.2d 736, 738 (Tex.Civ.App.-Dallas 1945, writ ref'd). The "fundamental idea connected with a homestead is ... that of *a place of residence* for the family, ... a secure asylum of which the family cannot be deprived by creditors." *Cocke v. Conquest*, 120 Tex. 43, 35 S.W.2d 673, 678 (1931) (quoting *Iken v. Olenick*, 42 Tex. 195, 197 (1874)) (emphasis added). If a structure is owned and occupied by a household and attached to land, it is protected as a homestead. *Cullers v. James*, 66 Tex. 494, 1 S.W. 314, 315 (1886); *see Capitol Aggregates, Inc. v. Walker*, 448 S.W.2d 830, 836–37 (Tex.Civ.App.-Austin 1969, writ ref'd n.r.e.). Although Norris's home is his boat, and it is attached to land by power, water, and sewer lines, the Court nevertheless concludes that his home is not protected and subject to execution. Because the Court's decision today violates the purpose of homestead protection as we have long interpreted it, I respectfully dissent.

The Court rejects Norris's homestead claim because the boat in which he lives is not permanently affixed to the land and

cle" and was "designed to serve as a recreational vehicle rather than a permanent dwelling"); *In re Major*, 166 B.R. 457, 459 (Bankr.M.D.Fla.1994) (holding that a houseboat was not a homestead under Florida law because the boat was not designed to serve as a permanent dwelling and was immobile only because owners lacked funds to repair the engine); *Miami Country Day Sch. v. Bakst*, 641 So.2d 467, 469 (Fla.Dist.Ct.App.1994) (holding that a houseboat was a homestead under Florida law because it "cannot be used as a vehicle: it has never been equipped with a motor and was towed to its present location"). In *In re Ross*, an Illinois bankruptcy court held that a houseboat was a homestead under an Illinois statute that expressly includes personal property. 210 B.R. 320, 322, 325 (Bankr.N.D.Ill.1997). In *In re Scudder*, an Alabama bankruptcy court held that a houseboat was a homestead under an Alabama statute that defines a homestead to include a "mobile home or similar dwelling" because a boat used as a primary residence is similar to a mobile home. 97 B.R. 617, 618–19 (Bankr.S.D.Ala.1989). And in *In re McMahon*, a Kentucky bankruptcy court held that a houseboat was a homestead under a Kentucky statute that expressly includes personal property. 60 B.R. 632, 633–34 (Bankr. W.D.Ky.1986). In contrast, as discussed above, Texas constitutional and statutory language contemplates a land-based inquiry, which explains the seamless case law holding that attachment to realty governs whether a dwelling is a homestead.

retains its mobile character. While I agree with the Court that it is attachment to realty that gives personal property homestead character, *Walker*, 448 S.W.2d at 835, I do not agree that, under our case law, the attachment must be permanent. If affixation to land-based systems is necessary to make a dwelling habitable, such attachment is sufficient to confer homestead status. For instance, the trailer home in *Walker* that was found to be sufficiently attached to realty to be a homestead was connected to gas, water, and sewage facilities on the lot upon which it sat. *Id.* at 832. Similarly, in *Clark*, we concluded that a house trailer on the debtor's property connected to another home's electrical system was exempt as a homestead, "even though it did not become a legal fixture attached to [the debtor's] lot." *See Clark*, 190 S.W.2d at 738.

It is difficult to distinguish between a mobile home hooked up to land-based electricity and water, and a boat hooked up to land-based electricity and water, when it is the attachment itself that makes the dwelling habitable as a residence. The common thread among cases holding that a chattel qualifies as a homestead is the land-based amenities that make the property suitable for dwelling. These amenities, in the words of the *Cullers* court, allow the personal property to form "part of the home proper" and acquire the character of realty. 1 S.W. at 315. It is Norris's boat's connection to land-based power, sewage, and water systems, that makes it habitable as a residence, and thus provides it with sufficient affixation to land to qualify as a homestead.

Contrary to today's decision, nothing in the Texas Constitution, Texas homestead statutes, or our prior decisions supports the notion that mobility is a bar to homestead character. While several appellate courts have stated that a chattel acquires homestead status by permanent affixation to land, in each of those cases the mobile home that was granted homestead protection could have easily become mobile once again and removed from the land. *See Minnehoma Fin. Co. v. Ditto*, 566 S.W.2d 354, 356–57 (Tex.Civ.App.-Fort Worth 1978, writ ref'd n.r.e.); *Walker*, 448 S.W.2d at 832.[1] In *Walker*, the court took judicial notice that the homestead-exempt mobile home was attached to leased land only by "the law of gravity and frictional adhesion." *See Walker*, 448 S.W.2d at 832. And in *Ditto*, the court noted that the exempt mobile home could be removed from its location without damage to either the home or the realty to which it was attached. *Ditto*, 566 S.W.2d at 356. In my view, considering the homestead law's fundamental purpose to protect the family dwelling, it is of no moment whether Norris's boat is attached to land by gravity, like a mobile home on cement blocks, or instead is securely moored in a rented slip to a land-based dock with cables, as is Norris's houseboat. Indeed, in *Cullers* we specifically rejected the notion that moving a chattel, in that case a house, denied it homestead character:

> If he occupies it with his family, it is their home. He may be compelled to move it from one lot to another as fast as legal process can oust him, still, though ambulatory, unsatisfactory, and in all its appointments mean; though it advertises the thriftless poverty of its proprietors, and is a caricature of the princely possibility of the exemption

---

1. In a third case involving a mobile home of some type, the court of appeals denied homestead protection to the property. *Gann v. Montgomery*, 210 S.W.2d 255 (Tex.Civ.App.- Fort Worth 1948, writ ref'd n.r.e.). There is no suggestion in that opinion that the trailer home was attached in any way to the land.

laws,—*it is the home of a family, and is embraced in the spirit and purpose, if not the letter, of the constitution.*

1 S.W. at 315 (emphasis added). Personal property need not be rendered permanently immobile to be exempt; "[t]he ease and nominal expense with which it can be removed to another location do not alter its homestead character." *Gann,* 210 S.W.2d at 260 (Speer, J., concurring). Indeed, such a requirement would be at odds with the notion that a homestead is a permanent estate that cannot be divested except by abandonment or alienation. *See Woods,* 19 S.W.2d at 38.

Although we clearly stated in *Cullers* that personalty may be "ambulatory" and retain its homestead character, the Court concludes that personalty must be a permanent addition to realty to receive protection as a homestead. The Court cites no textual change to our Constitution that supports such a radical departure from our precedent (because none has occurred); instead, it relies on the passage of time and a totally inapposite decision, *Sonnier v. Chisholm–Ryder Co.,* 909 S.W.2d 475, 479 (Tex.1995). In *Sonnier,* the Court interpreted a statute that created a ten-year statute of repose for persons who construct or repair improvements to real property, TEX. CIV. PRAC. & REM.CODE § 16.009; we held that a defendant who manufactured a tomato chopper that was later installed by someone else in a cannery was not subject to the statute. *Id.* at 483. We reasoned that a manufacturer of personalty does not "construct" an "improvement" within the repose statute's meaning because property must be "annexed to realty with the intent that it be a permanent addition to the realty" for it to be an improvement as the statute intended it. *Id.* at 481; *see also id.* at 479 (stating "[g]enerally, whether an attachment of personalty to realty constitutes an improvement is a question of the owner's

intent"). The statute we interpreted had nothing to do with protecting the homes of Texas families from execution. When construing the homestead provision, we are bound to "effectuate [its] beneficent purpose...." *Woods,* 19 S.W.2d at 35.

Of greater import than the type of structure and its ability to move or be moved is whether the structure comes within the "overruling purpose of the constitution to secure to the family" a home. *Cullers,* 1 S.W. at 315; *see also Clark,* 190 S.W.2d at 738 (holding that a trailer set apart from a residence house was included in the homestead exemption because it "was devoted to such use as brought it within the spirit and purpose of the homestead exemption statute"). So long as there is a residence-dependent attachment to land, the salient question becomes whether granting the homestead exemption to the home would serve the policy of the exemption, to preserve the family home for a fresh start. I would hold that, because Norris's sole residence is his boat which is attached to land-based amenities that are necessary for habitation, it comes within the purpose of the homestead laws and qualifies for the homestead exemption.

By ignoring the policies underlying our homestead exemption, the Court places itself at odds with a more family-supportive "homestead" concept adopted by our Legislature and Texas administrative bodies. In the Tax Code, for example, the Legislature took a functional approach in creating a $3,000 county-tax exemption for a " 'residence homestead,' " emphasizing how property is used rather than its particular form. TEX. TAX CODE § 11.13(a), (j). The Legislature defined the term as "a structure (including a mobile home) ... (together with the land, not to exceed 20 acres ...)," so long as the structure "is designed or adapted for human residence; is used

as a residence; and is occupied as his principal residence." *Id.* at 11.13(j). Under that definition, Norris's boat would qualify as a homestead. Norris's boat would also be considered a homestead under regulations governing eligibility for the Temporary Assistance for Needy Families program, which define "homestead" as "[a]ny structure, including a houseboat or motor home, that the household uses as its residence...." TEX. ADMIN. CODE § 372.356(5). While these provisions do not govern the question before us as they are context-specific, their approach is far more protective of the family home than the Court's decision today, contrary to the constitutional intent. The Court states that these laws demonstrate that the Legislature is "adept at adopting different definitions for different purposes." 215 S.W.3d at 858. But they more likely demonstrate the Legislature's reliance on *Cullers* and our longstanding interpretation of "homestead," since our lawmakers are presumed to be acquainted with our construction of state laws. *Tex. Dep't of Protective and Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex.2004).

The Court's cramped interpretation of homestead is inconsistent with this Court's precedents and the policies underlying the constitutional exemption. Accordingly, I respectfully dissent.