## ECKSTINE v. WEBB WALKER JEWELRY CO.

### No. 14610.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 11, 1944.

Rehearing Denied March 10, 1944.

W. E. Myres, of Fort Worth, for appellant.

Rawlings, Sayers & Scurlock, of Fort Worth, for appellee.

SPEER, Justice.

From an order, after hearing, a temporary injunction was issued by a district court of Tarrant County in favor of Webb Walker Jewelry Company, a corporation, to which we shall refer as plaintiff, or lessor, against Sam Eckstine, to whom we shall refer as defendant, or lessee. Eckstine has appealed.

Plaintiff's pleadings allege that on January 14, 1938, its predecessor in title, by written contract leased to defendant, for a period of five years ending with January 15, 1943, a certain lot about 100 feet square, in the City of Fort Worth, describing the lot, for a rental of $7500 payable $125 per month; the first payment being due on January 15, 1938, and a like amount on the 15th day of each succeeding month during

the life of the lease. That defendant paid the rentals during the contract period and continued thereafter to use and occupy the lot and pay the rentals during 1943, until on August 15, 1943, he failed to pay the rental installment due at that time; that by reason of so holding over with the consent of plaintiff, as a matter of law, there was an implied contract of rental for one year beginning with January 15, 1943, upon the same terms, as the original five-year contract. It was alleged that by a provision in the written contract, defendant was privileged to erect improvements on the premises, but in the event lessor exercised an option to sell the property and thereby obtain possession of it during the term of the lease, the defendant (lessee) obligated himself to sell to lessor all such improvements at a discount of ten per cent from their original cost, but if lessor elected not to purchase the improvements, then lessee was given permission to remove them. It is averred that plaintiff has not exercised the option to terminate the lease as provided in the contract, and that the improvements belong to him; that defendant is claiming said improvements and threatens to remove them from the lot. Plaintiff's prayer was for recovery of its damages, general and special relief, and for injunction restraining defendant from removing the improvements off the lot.

Defendant answered with general denial and specially in effect, admitting the condition or option in the contract pleaded by plaintiff as made when the original leasing took place, but that under the terms of the contract, title to the improvements placed on the property was to remain in him unless the option provided for was exercised by plaintiff and that since he owned the improvements he had the right to remove them, and he should not be enjoined from doing so.

At a hearing of the issues, the trial court construed the contract as contended by plaintiff and issued a temporary injunction enjoining defendant from removing the improvements, "until the further order of said court". It is from this order defendant has appealed.

The provision in the contract upon which both parties rely is as follows:

"It is agreed that should the lessor have an offer for the sale or trade of this property which he desires to consummate, by giving lessee ninety days written notice, lessee shall quit the premises and the remaining portion of the unexpired lease shall be terminated at the expiration of said ninety days period, and that total rentals shall be paid only in proportion to the time that the premises are occupied."

"It is further provided that lessee shall have the consent of lessor to erect improvements on the premises above described, and in the event lessor exercises the option to obtain possession of the premises, lessee agrees to, at the option of lessor, sell to lessor all improvements erected at the cost to lessee, less ten per cent. Should lessor not elect to purchase the improvements referred to, lessor hereby grants permission to lessee to remove said improvements without let or hindrance, and waives any claim to title which he, lessor, may have on the improvements."

The undisputed testimony shows that the leased premises consisted of a lot 100x100 feet upon which had previously been a building, but had been torn down and removed, leaving the bare lot upon which there was a concrete surface; that in that concrete surface were some holes, extending through the concrete, in which posts or columns had extended. Defendant expected to and did use the premises at all times as an automobile parking lot; shortly after the lease contract was executed defendant erected a shed 36x100 feet, constructed of galvanized iron covering, supported by four inch iron pipes or columns with cross arms of pipes to support the roof. Defendant first testified that he put the columns on top of the cement surface, but further said he did not break the cement surface at any place; that he partially cleaned out the holes in the cement where previous columns had existed and put his columns or pipe supports therein and poured concrete in the holes around the posts.

President of plaintiff corporation testified in effect that he knew the contents of the lease. contract when his corporation took over the property and asked the manager of the original lessor to continue to collect the rents and turn them over to plaintiff, and that this was done throughout the lease contract and during the period of months during 1943 after the expiration of the initial lease; that shortly after the expiration of the contract, plaintiff had the agent to request of lessee defendant to pay more rent; that defendant declined to do so and said he did not want to keep the premises any longer under

previous arrangements and the price being paid. Plaintiff told defendant in the latter part of August 1943, he wanted possession of the premises with the view of re-renting them. Defendant said he would remove the improvements and give possession at once. Then it was that plaintiff claimed the improvements and procured the original restraining order against removal of the improvements by defendant.

There is no serious contention made by plaintiff that all rentals had not been paid up to October 1, 1943, in fact it was stated by the president of plaintiff, to the court that "it might be that the rent is paid up until the fifteenth of next month" (meaning October 15, 1943).

In the judgment entered the court found the erection by defendant of the sheds and further recited: they were "of a perma-nent nature consisting of galvanized iron sheds which could not be removed without inflicting damage upon the freehold; and said improvements are appropriate and useful for an open market, parking station and other types of business which do not require a structure enclosed by walls." The judgment further recites: "Under such circumstances, the court finds that it was the intention of the parties making the lease contract that the defendant, Sam Eck-stine, should be permitted to remove the improvements referred to only in the event the lessor exercised the option provided for to terminate the lease; and thereupon elected not to purchase the improvements from the lessee, 'at cost * * * less ten per cent (10%)' and therefore it was not intended or agreed that the defendant should be permitted to remove said improvements of a permanent nature from the premises after the expiration of said lease contract."

All five of the appealing defendant's points of error relate to the construction given by the court to the contract under the testimony. Plaintiff counters with much earnestness that the judgment of the court is correct.

We have concluded that the court erred in his construction of the contract and in the application of the law to the undisputed facts.

As a background for this opinion we should here observe some of the rules of existing law which will be read into the contract, when the parties did not stipulate to the contrary.

Much has been written by the courts concerning permanent and temporary improvements placed on the freehold by tenants, and fixtures thereto, and a distinction is recognized in articles known as "trade fixtures". The nature, purpose, suitableness, and intention of the tenant, along with the legal presumptions of facts indulged by the law, will control, absent a contract to the contrary.

In 19 Tex.Jur. 723, sec. 17, the rule is laid down to the effect that the late trend of the courts, as between landlord and tenant, in determining whether chattels placed on lands by lessee, has been permanently affixed and whether they may be removed by the tenant at the end of the lease contract is much more liberally construed in favor of the tenant than was formerly done by the courts. Citing Menger v. Ward, Tex.Civ.App., 28 S.W. 821, reversed by Supreme Court on other grounds, 87 Tex. 622, 30 S.W. 853.

In Sanders v. Lefkovitz, Tex.Civ.App., 292 S.W. 596, 598, the Menger v. Ward case, supra, was cited and followed, and this conclusion was drawn from that holding: "As between [the] landlord and tenant, the greatest latitude is allowed in favor of the tenant, that fixtures set up by the tenant for the better enjoyment of trade are retained by the tenant."

In 19 Tex.Jur. 724, sec. 18, the rule is announced in this language: "The controlling question is whether or not it was the intention of the tenant at the time of the erection of the improvements, or the placing of the thing, to make it a permanent accession to the freehold." Discussing this point, the Supreme Court in O'Neil v. Quilter, 111 Tex. 345, 234 S.W. 528, had before it the building of a three room house by the tenant on the premises of the landlord with the knowledge and consent of the landlord. The tenant removed the house at the end of his tenancy and the landlord sought to recover its value. This was a certified question and the inquiry was construed to be, was it the tenant's intention, at the time he built the house on his landlord's premises, that it should be a permanent accession to the real estate. It was held that the court would determine from all the facts and circumstances, the intentions of the tenant; basing the rule on the holding in Hutchins v. Masterson & Street, 46 Tex. 551, 554, 26 Am.Rep. 286. In the cited case, the test of intention was determined

from (1) was there a real or constructive annexation of the article to the realty? (2) Was the annexed article adapted to the uses and purposes of the realty? And (3) the intention of the tenant may be inferred from the nature of the article annexed, the situation of the interested parties, the policy of the law with respect thereto, the mode of annexation, and the purpose or use for which the annexation was made. In arriving at the conclusion that the house built by the tenant was removable by him, the court reasoned that from the facts involved, the landlord having the right to terminate the tenancy, it was persuasive that the tenant did not intend to donate the value of the house to the landlord but that it was placed there by him for his temporary use and benefit; that the building was of a nature that it could be removed without injury to the freehold, and the legal presumption was that the tenant intended to remove it at the end of his tenancy. The Court quoted from Wright v. Macdonnell, 88 Tex. 140, 30 S.W. 907 (911) this language: "An intention on the part of a tenant to surrender a valuable right ought not to be lightly implied, though such intention might be made manifest by the circumstances of the particular case."

The O'Neil v. Quilter case, supra, was cited and followed in Ransberger v. Leach, Tex.Civ.App., 109 S.W.2d 331, where it was held that the undisputed evidence in that case required the presumption that defendant's intention was that the building should not be permanently affixed to the land.

19 Tex.Jur. 730, sec. 22, announces the general rule to be that a tenant may remove and take away whatever improvements he erects on the premises for the purpose of carrying on his trade, whether it be machinery or buildings, and even though attached to the soil. We think, however, that such rule would be subject to contracts to the contrary, and provided that such removal would not materially injure the freehold. It has been held that such a rule would be conducive to the enhancement of trade and to encourage industry.

It is obvious to us that the sheds placed by defendant on plaintiff's lot were useful, if not absolutely necessary for his proper use and enjoyment of his leasehold; the expense incurred in making the annexation is not disclosed, but plaintiff alleged they were of the reasonable value of $550. We do not know the value of the vacant lot, but by plaintiff's testimony to the effect that interest on the investment, along with taxes, were such that $125 per month would not cover "carrying charges", it is fair to assume that the lot had a very substantial value. The proportionate relation between the value of the real estate and the value of the improvements placed thereon by the tenant may be considered in arriving at the tenant's intention.

We think it altogether improbable that defendant had the intention of contributing that amount toward the enhancement of plaintiff's property; as stated in O'Neil v. Quilter, 111 Tex. 345, 234 S.W. 528, 529, "The legal presumption is just to the contrary;" but that he did not have the intention to enhance the value of plaintiff's freehold. Plaintiff complains in its petition that if defendant should remove the shed the value of its property would be almost wholly destroyed, because it would leave only a vacant lot. We fail to see how the removal of the shed would materially lessen the value of the lot from what it was before the shed was erected. At that time plaintiff only had a vacant lot covered with a cement surface. As indicated above, the cement surface was not broken when the shed was built and its removal will only leave the holes that were there before the improvements were made.

We think there was a misapplication of the proper rule in such cases as this, in the finding by the trial court in the judgment to the effect that the improvements are of a permanent nature which could not be removed without inflicting damage to the freehold. Obviously, the court was considering the shed a part of the freehold, in which event clearly it would damage the "freehold" to remove that part of it. But, as pointed out above, a removal of the shed would inflict no injury to the freehold if the shed be not included therein. The manner in which the shed was attached to the land, was, as said by some courts, so lightly attached, that no perceptible or material injury would be inflicted by its removal. What has been said so far in this opinion relating to the law and undisputed facts would not be applicable to this case, if by the terms of the written contract defendant obligated himself not

to remove the improvements placed there with the consent of the lessor.

The trial court's construction of the language used in the contract is: That the defendant should be permitted to remove the improvements *only* in the event the lessor exercised the option given him to terminate the lease and elected, under the option given him, not to purchase the improvements at cost price, less ten per cent. It is certain that the condition for the option to purchase the improvements by lessor did not happen. It must follow that the only chance, under the language used, for lessor to purchase and thereby own the improvements did not arise, and of course lessor cannot claim the improvements by virtue of a purchase.

■ The construction of the lease contract is to be governed by the general rules of construction of written instruments; it is not contended by either party that its terms are ambiguous; so its interpretation will be arrived at by the language used and legal presumptions applicable. The contract gave defendant the right to erect improvements on the premises; the kind and quality not specified. There was an option reserved by lessor to purchase the improvements from lessee under named conditions; those conditions, under which the option could be exercised, did not happen. The reserved option for lessor to purchase from the lessee the improvements was a recognition by lessor of lessee's ownership. It is not probable that lessor would have reserved a right to purchase something it already owned. Then we ask, when did title to the improvements pass from lessee to lessor if it ever passed? If the ownership passed to lessor, was it at the end of the lease contract; if at that time, by what language found in the contract can this be supported? Again, if the ownership passed to lessor at the end of the contract, then which contract, the written one or the implied one extending into 1943? The implied contract was terminated by the mutual consent of the parties, at a time when apparently all rentals due had been paid. We think the answer to each of these inquiries must of necessity read into the contract, language which cannot be found there, unless it could be said that the law, or at least a legal presumption required it. We do not understand that any rule of law authorizes such interpolation, but as above pointed out, the legal presumption is to the contrary, that is, that the tenant did not intend to enhance the value of the freehold to the lessor, but that he placed the improvements there for his own use and benefit, with the expectation of removing them when his tenancy ended. In view of this legal presumption, the nature of the improvements, and their adaptability to the uses of the tenancy, we cannot agree with plaintiff's contention and the court's conclusions that it was intended by the parties that lessee could only remove the improvements, if lessor exercised its right to terminate the lease contract by sale or trade and declined to purchase the improvements from the lessee.

■ There is yet another reason for the conclusion we have reached. It was alleged by plaintiff that when defendant held over after the expiration of the written contract, there was an implied agreement to continue such tenancy for another year, under the same conditions as expressed in the initial contract. The contention, generally speaking, is sound. Granberry v. Texas Public Service Co., Tex.Civ.App., 171 S.W.2d 184, 187. Lessor acquiesced in the continuation of the occupancy, but during the period of the implied contract, lessor demanded more rentals, and lessee agreed to terminate the contract. The manner in which the lease contract was terminated in no way resembles the conditions under which the written contract provided that lessor could acquire title to the improvements.

■■ We see nothing in the facts and circumstances under which the lease contract was terminated to warrant a finding that plaintiff thereby acquired title to the improvements placed on the premises by defendant with the former's consent, and thereby work a forfeiture of defendant's title and ownership. Forfeitures are not favored by our laws, and if a contract is susceptible of an interpretation which will prevent forfeiture of a valuable right, it will be so construed. Reader v. Christian, Tex.Civ.App., 234 S.W. 155, writ refused.

It is obvious, from what we have said, that we hold that the injunction was improperly issued. We, therefore, reverse the judgment of the court ordering the writ to issue and render judgment dissolving the writ of injunction. It is so ordered.