Lester NEELY, Appellant,

v.

John JACOBS d/b/a Aamco Automatic Transmissions, Appellee.

No. 2–83–213–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 2, 1984.

Dillon & Giesenschlag, P.C., Bryan, Dennis W. McGill, Bryan (on appeal only), for appellant.

John Narsutis, Denton, for appellee.

Before FENDER, C.J., and HUGHES and JOE SPURLOCK, II, JJ.

## OPINION

FENDER, Chief Justice.

This suit began as an injunctive action by the appellant, Lester Neely, against the appellee, John Jacobs, to prevent Jacobs from removing six hydraulic lifts from a building which Jacobs leased from Neely.

Jacobs counterclaimed, seeking damages for conversion of the lifts and prejudgment interest on those damages. From a judgment denying the injunctive relief and awarding Jacobs damages and prejudgment interest, Neely appeals.

We affirm the judgment, but order a partial remittitur as to damages.

In 1968, appellee Jacobs entered into an agreement with a John W. Porter to lease a building suitable for use as a transmission shop. Shortly after signing the lease, Jacobs installed six hydraulic lifts on the property. Each lift was installed by placing its base in an excavation approximately nine feet deep and pouring concrete around the base. No concrete was poured under the base of the lifts however, so that it was possible to remove them for repair.

Jacobs renewed his lease agreement with John Porter in 1979. In November, 1980, appellant Lester Neely attempted to purchase the transmission franchise from Jacobs. When Jacobs refused to sell, Neely purchased the building occupied by Jacobs from John Porter. Because Jacobs was in arrears in rent payments, Neely ordered Jacobs to vacate the premises.

At the time Neely gave Jacobs notice to vacate, a dispute arose as to the ownership of the lifts. Neely claimed that he owned them pursuant to the warranty deed conveyed to him by John Porter. Jacobs, however, claimed that the lifts were trade fixtures which he was entitled to remove. When Jacobs left the premises, therefore, he took with him various controls and above ground pipes which rendered the lifts inoperable.

Neely responded to Jacobs' action by filing suit to enjoin Jacobs from removing the lifts from the building. Jacobs counterclaimed, seeking damages from Neely for conversion of the lifts and prejudgment interest on those damages. Trial was to the court, which found that Neely had converted the lifts. The trial court further determined that the value of the lifts to Neely at the time of conversion as well as their cash market value on that date was $20,000.

Neely alleges thirteen points of error, which will be set out as they are addressed in this opinion. In points of error one through four, Neely argues that there is no evidence, or alternatively insufficient evidence, that the lifts in question were trade fixtures which Jacobs was entitled to remove. He claims that the evidence clearly shows that the lifts were permanently affixed to the property, and that therefore title to them passed to him when he purchased the property. We find no merit to these arguments.

■■■ In reviewing legal insufficiency on "no evidence" points of error, this court may consider only the evidence tending to support the trial court findings. We must give effect to all reasonable inferences that may be drawn from the evidence favorable to the finding, and disregard all contrary or conflicting evidence. *Precipitair Pollution Control v. Green*, 626 S.W.2d 909 (Tex.App.—Tyler 1981, writ ref'd n.r.e.). In deciding a factual "insufficiency" point, however, we must consider and weigh *all* of the evidence in the case and decide whether the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■■■ Having set forth the proper evidence standards of review, we must now apply these standards in order to determine whether the evidence supports the conclusion that the lifts were trade fixtures. In general, a trade fixture is an article which (1) is annexed to the realty by the tenant to enable him properly or efficiently to carry on the trade, profession or enterprise contemplated by the tenancy contract or in which he is engaged while he is occupying the premises, and (2) can be removed without material injury to the freehold. *Jim Walter Window v. Turnpike Distribution*, 642 S.W.2d 3 (Tex.App.—Dallas 1982, no writ). The general rule is that in the absence of a contract between the landlord and tenant to the contrary, a tenant may remove and take away trade fixtures at the

end of his lease. *Eckstine v. Webb Walker Jewelry Co.,* 178 S.W.2d 532 (Tex.Civ.App. —Fort Worth 1944, writ ref'd w.o.m.). The reason for the rule is that improvements made by a vendor, mortgagor, or ancestor are made to enhance the value of the estate, and to be permanent, while those made by the tenant are temporary and made for the purposes of his trade. *Jim Walter Window, supra.* Thus, the law presumes that a tenant who erects improvements on leased land did not intend to contribute toward enhancement of the property. *Eckstine, supra.*

█ In reviewing the record in the case at bar, we find evidence which supports the trial court's conclusion that the lifts were trade fixtures which Jacobs was entitled to remove. The evidence clearly shows that the lifts met the first prong of the trade fixture test; it was undisputed that they were originally affixed to the building by the tenant, Jacobs, in order for him to properly carry on his transmission business. Further, it was Jacobs' undisputed testimony that the lifts were tools of the trade and that they were the type normally used in the transmission business.

There is also evidence in the record which supports the conclusion that the lifts were removable without material injury to the freehold, and thus met the second requirement of the trade fixture test. The evidence shows that in order to remove a lift, the concrete collar around its base must be broken. A hole is then dug around the base of the lift, and the lift is pulled out with a tow truck. Although the process is somewhat expensive and time consuming, it does not affect the structure of the building but only results in the removal of a small amount of concrete around the base of each lift. In fact, Neely testified that if the job is done properly, very little concrete is required to return the lifts to their original place.

The expense and time required to take the lifts out of the building did not prevent them from being periodically removed for maintenance work. During the operation of his transmission franchise, Jacobs removed the lifts and had them repaired and replaced at least once. Further, when Neely purchased the building he also pulled out the lifts for repairs and later returned them.

We conclude that the evidence is sufficient to support the trial court's determination that the lifts are trade fixtures. Thus, in the absence of a contract to the contrary, Jacobs was entitled to remove the lifts when he vacated the premises. *Eckstine, supra.* Since we find no evidence of any contract requiring Jacobs to leave the lifts attached to the freehold, we hold that the trial court properly concluded that Jacobs was entitled to take out the lifts when he left the building. Points of error one through four are overruled.

In points of error nine and ten, Neely argues that the trial court erred in awarding $20,000 damages to Jacobs because there is no evidence, or factually insufficient evidence, to support the court's finding that the lifts had a cash market value of $20,000 at the time of conversion. In the alternative, Neely argues in points of error five through eight that even if there was evidence to support such a finding, the court nevertheless erred in concluding that the lifts had a value to Jacobs of $20,000. The court so erred, Neely claims, because it failed to account for the expenses Jacobs would have incurred in removing the lifts from the premises.

█ Before proceeding to a discussion of Neely's alternative argument, we must initially address his legal and factual sufficiency of the evidence challenges to the trial court's finding of a $20,000 cash market value for the lifts. At trial, Jacobs testified that the value of the lifts at the time of conversion was between $20,000–$25,000. He further testified that at about the conversion date, the lifts would have cost approximately $48,000 to completely replace, exclusive of installation expenses. Although Neely presented a witness who

testified that the replacement cost of the lifts would be approximately $13,800, we cannot say that the trial court's finding was against the great weight and preponderance of the evidence. Thus, we hold that the trial court properly concluded that the cash market value of the lifts was $20,000. Points of error nine and ten are overruled.

We now turn to a consideration of Neely's alternative point, in which he claims that the court erred in failing to reduce the damage award by the amount of expenses required to remove the lifts from the ground. Neely points out that both Jacobs and Jacobs' own witness, John Hall, admitted at trial that it would cost $1,700 per unit to remove the lifts from the ground. Thus, Neely claims, the $20,000 damage award should have been reduced by $10,200. We agree.

■■■■ In general, the damages in an action for conversion are measured by the sum of money necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong. *Groves v. Hanks*, 546 S.W.2d 638 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Thus, compensation for the injury is the result to be obtained, and while the wrongdoer is not allowed to profit from his own wrongdoing, the same rule should apply to the aggrieved party. *Kennann v. Deats*, 258 S.W.2d 145 (Tex.Civ.App.—Amarillo 1953, writ ref'd n.r.e.). In the instant case, Jacobs is entitled to damages which would place him in the position he would have been in had Neely not converted the lifts. If the lifts had never been converted, Jacobs would have had to pay $10,200 to have them removed from the building. Thus, the amount of damages sustained by Jacobs as a result of the conversion by Neely was $20,000, less the $10,200 removal cost, or $9,800. If Jacobs were to be awarded the full $20,000, he would be making an unjust profit from the conversion. Thus, we sustain Neely's points of error five through eight and reduce the amount of damages awarded to Jacobs to $9,800.

■■■ In points of error eleven and twelve, Neely argues that the trial court erred in finding that Jacobs had no duty to Neely for any obligations to be performed or avoided. Neely claims that Jacobs was a holdover tenant who had the duty to properly preserve the premises and to pay rent for utilization of the building after it was purchased by Neely. However, Neely has argued these points only generally in his brief and has cited no supporting authority. Therefore, he has failed to meet the minimum briefing rules with regard to points eleven and twelve and we consider them to be waived. TEX.R.CIV.P. 418; *Estate of Blardone v. McConnico*, 604 S.W.2d 278 (Tex.Civ.App.—Corpus Christi 1980), *writ ref'd n.r.e. per curiam* 608 S.W.2d 618 (Tex.1980).

In point of error thirteen, Neely argues that the trial court erred in awarding prejudgment interest on Jacob's damages because Jacobs failed to specifically plead for such interest. Neely further claims that a prejudgment interest award was improper because the date of conversion could not be established at a specific date, and because the amount of damages was disputed. We disagree.

■■■ It is a well-settled rule in Texas that prejudgment interest may only be awarded when the petition contains pleadings which support such an award. *Pickett v. J.J. Willis Trucking Co.*, 624 S.W.2d 664 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Further, prejudgment interest may only be awarded when damages are established as of a definite time and the amount of the damages is definitely determinable by fixed rules of evidence and known standards of value. *Maxey v. Texas Commerce Bank of Lubbock*, 571 S.W.2d 39 (Tex.Civ.App.—Amarillo 1978), *writ ref'd n.r.e. per curiam*, 580 S.W.2d 340 (Tex.1979). In the case at bar, Jacobs specifically pled in his Second Amended Coun-

terclaim for "actual damages in the sum of $40,000, *plus interest from the date of the taking by Neely*" (emphasis added). In addition, the specific date of the conversion was proved at trial, and the amount of damages was established by proving the cash market value of the lifts at the date of conversion. Thus, all of the requirements for the award of prejudgment interest have been met, and the trial court properly allowed such interest. Point of error thirteen is overruled.

The judgment is affirmed. In addition, we order a remittitur of $10,200 on the judgment and reduce the prejudgment interest award to interest on $9,800 from the date of conversion, April 13, 1981, to the date of judgment.