ACCEPTED
05-19-00070-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/20/2019 11:59 PM
LISA MATZ
CLERK

ORAL ARGUMENT REQUESTED

NO. 05-19-00070-CV

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/20/2019 11:59:16 PM
LISA MATZ
Clerk

IN THE FIFTH COURT OF APPEALS OF TEXAS
AT DALLAS

---

**ENCORE INTERNATIONAL INVESTMENT FUNDS, LLC,**
**Appellant,**

**v.**

**2608 INWOOD, LTD.,**
**Appellee.**

---

Appealed from the 162nd Judicial District Court
Dallas County, Texas
Cause No. DC-17-13285

---

**APPELLANT'S REPLY BRIEF**

---

William S. Richmond
Texas Bar No. 24066800
brichmond@pcrfirm.com
**PLATT CHEEMA RICHMOND PLLC**
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
Direct: 214.559.2700
Fax: 214.559.4390

**COUNSEL FOR APPELLANT**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. i

INDEX OF AUTHORITIES........................................................................... ii

REPLY ........................................................................................................1

    A. Whether Attached or Unattached, the General Rule Controls
    Because the Lease Terms Do Not Expressly Forfeit the Generator
    to Landlord.................................................................................................1

    B. Trial Court Erred by Declaring "The Generator is an attached trade
    fixture.".....................................................................................................6

        1. No Evidence in the Summary Judgment Record of
        Attachment ........................................................................................6

        2. Genuine Issues of Material Fact Exist on the Issue of Attachment ..7

        3. No Actual Judicial Notice Occurred; Regardless, Judicial Notice
        is Improper for Specific Facts on the Generator's Status ...................11

    C. The Lease is Ambiguous if Landlord's Interpretation is Deemed
    Reasonable ...............................................................................................14

    D. Landlord Cannot Prevail on its "Generator as Improvement"
    Argument .................................................................................................14

    E. Improper Declaratory Judgment ............................................................17

PRAYER......................................................................................................18

CERTIFICATE OF COMPLIANCE..............................................................19

CERTIFICATE OF SERVICE .....................................................................19

i

# INDEX OF AUTHORITIES

*Capitol Aggregates Inc. v. Walker*, 448 S.W.2d 830, 832-33 (Tex. App.—Austin 1969)...................................................................................13

*CKB & Assocs. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987).................................................................... 2-3

*Connelly v. Art & Gary Inc.*, 630 S.W.2d 514, 514-15 (Tex. App.—Corpus Christi 1982)...............................................................8

*Cremers v. Hallman*, 403 S.W.3d 878 (Tex App.—Texarkana 2013, pet. denied)............................................................................ 4-6

*Eckstine v. Webb Walker Jewelry Co.*, 178 S.W.2d 532, 534-544 (Tex. Civ. App.—Fort Worth 1944) .............................................4, 9

*English v. Miller*, 43 S.W.2d 642, 644 (Tex. Civ. App.—Amarillo 1931) ...................................................................................12

*Gonzalez v. Mission American Ins. Co.,* 795 S.W.2d 734, 736 (Tex. 1990) ...................................................................................15

*Harper v. Killion*, 348 S.W.2d 521, 523 (Tex. 1961)...............................................12

*Neely v. Jacobs*, 673 S.W.2d 705 (Tex. App.—Fort Worth 1984)...........................9

*Nine Hundred Main, Inc. v. Houston*, 150 S.W.2d 468, 471-472 (Tex. Civ. App.—Galveston*)* ...................................................................8

*Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987) ..........................6

*Schumann v. Jenkins*, 40S.W.2d 214 (Tex. Civ. App.—San Antonio 1931) ...................................................................................9

*Van Valkenburgh v. Ford*, 207 S.W. 405, 420 (Tex. Civ. App.—Galveston 1918)................................................................8

<u>**APPELLANT'S REPLY**</u>

Appellant Encore International Investment Funds, LLC ("Encore") respectfully requests that this Court reverse the trial court's summary judgment orders and final judgment that, *inter alia*, (1) declared the Generator an attached trade fixture owned by Appellee 2608 Inwood Ltd. ("Landlord") and (2) found against Encore on its claims for theft and conversion.

**A.      Whether Attached or Unattached, the General Rule Controls Because the Lease Terms Do Not Expressly Forfeit the Generator to Landlord**

The plain language of the Lease does not grant any interest in the Generator to Landlord, whether that interest is one of ownership or possession.[1] Section 21 of the Lease contemplates only three potentially-relevant circumstances regarding fixtures, improvements, and the like, and none of them grants ownership or possession of the Generator to Landlord in this case, regardless of whether it is attached or unattached. Instead, Landlord is forced to twist the general rule to keep it from applying to the circumstances here, which are not specifically addressed in the Lease.

**Section 21, Sentence #2: "At the expiration or termination of this Lease, Tenant shall deliver to Landlord the Premises with all improvements located**

---

[1] This distinction drawn by Landlord, however, is at best irrelevant. Possession is effectively ownership when it comes to the Generator, and the cases cited by both parties confirm that when improvements or fixtures are granted to one party or the other, the successful party has both possession and ownership.

1

**therein in good repair and condition…." [CR323].** Given there is no legitimate argument that the Generator is an improvement (much less any evidence) as that term is used in the Lease, this sentence does not grant the Generator to Landlord. *See* Section D, *infra* (detailed rebuttal on this issue).

**Section 21, Sentence #3: "Provided that Tenant has performed all of its obligations hereunder, Tenant may remove all unattached trade fixtures, furniture, and personal property placed in the Premises or elsewhere in the Building by Tenant (but Tenant may not remove any such item which was paid for, in whole or in part, by Landlord or any wiring or cabling unless Landlord requires such removal)." [CR323].** The plain reading of this section is that Encore has the option to remove unattached trade fixtures, but Encore cannot remove (a) any unattached trade fixtures that were paid for by Landlord or (b) any wiring or cabling unless Landlord opts for their removal. This section puts the decision for removal of unattached trade fixtures solely in Encore's hands as Tenant—nothing in this provision specifically or implicitly speaks to Landlord's right to keep unattached trade fixtures except where Landlord paid for them (it is undisputed that Encore paid for the entirety of the Generator). Under the contract interpretation rule of *expresio unius est exclusion alterus*, the expression of the former scenario without the latter necessarily excludes the unmentioned latter. *See, e.g., CKB & Assocs. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987) ("the naming of one

2

thing excludes another"). Furthermore, this sentence does not address the scenario of whether a Tenant may remove an <u>attached</u> trade fixture, thus requiring a look at the next sentence in Section 21.

**Section 21, Sentence #4: "Additionally, at Landlord's option, Tenant shall remove such alterations, additions, improvements, trade fixtures, personal property…and furniture…as Landlord may request…."[CR323].** The plain reading of this section is that Landlord can require Tenant to remove trade fixtures, whether attached or unattached. This section does <u>not</u> say, as Landlord hopes, that Tenant must leave all trade fixtures, or that Landlord can bar Tenant from removing trade fixtures. Literally, this provision only contemplates one option for Landlord (forced removal) while leaving the other option (barred removal) unaddressed. Including one option but not the other excluded the other. *See also CKB*, 734 S.W.2d at 655 ("the naming of one thing excludes another").

It is in the gap of scenarios regarding trade fixtures not specifically addressed by Sentence #3 and Sentence #4 that the general rule on trade fixtures properly sits and requires reversal. To the extent the Generator is an <u>un</u>attached trade fixture, Sentence #3 applies and allowed Encore to remove the Generator. To the extent Landlord argues the Generator is an attached trade fixture, Sentence #3 is inapplicable, while Sentence #4 only allows Landlord to force removal. With no statement in Sentence #4 (or anywhere else in the Lease) authorizing Landlord to

3

bard removal of an attached trade fixture, the general rule applies: Encore as Tenant remained the owner of the Generator and fully within its rights to remove the Generator upon termination of the Lease. *See, e.g. Cremers v. Hallman*, 403 S.W.3d 878, 884 (Tex. App.—Texarkana 2013).

Landlord's Response cites authorities that support Encore's interpretation and the application of the general rule. In *Eckstine*, the lease set out a specific process for landlord to acquire the tenant's improvement, which was a metal shed installed by poles in concrete bases poured by the tenant: landlord could buy the improvement at a discount at the end of the lease, but if landlord declined to buy them, tenant could take them. *Eckstine v. Webb Walker Jewelry Co.*, 178 S.W.2d 532, 534-544 (Tex. Civ. App.—Fort Worth 1944). The key questions were (a) when title for the improvements passed from tenant to landlord and (b) did the termination/buy circumstances in the lease occur such as to prevent tenant from taking its shed. *Id.* The appellate court determined that the lease did not prevent tenant from taking its shed because the specific termination/buy circumstances did not occur, and thus the presumption of a tenant's rights to its installed improvement controlled to prevent a forfeiture given forfeitures are disfavored under Texas law. *Id.*

Like in *Eckstine*, even if the Generator is an attached trade fixture as Landlord argues, the Lease does not contain specific language as to what happens to an unattached trade fixture when the Tenant wants to remove it—the Lease only

specifically contemplates in Sentence #4 that the Landlord can force removal, not that Landlord can <u>bar</u> removal. Having not addressed that scenario, Texas law fills the gap: forfeitures are disfavored, and tenants may remove their trade fixtures.

Likewise, in *Cremers*, the court of appeals found that a lease's failure to specifically address the scenario at issue led to application of the general rule. *Cremers v. Hallman*, 403 S.W.3d 878, 888 (Tex. App.—Texarkana 2013). The landlord in *Cremers* sought to keep the tenant's trade fixtures, arguing that the lease provided landlord the option to pay no more than "$25,000 at the conclusion of the lease 'for all monies spent on concrete and dirt work for expansion, building expansion, and/or HVAC'…." *Id.* at 887. The appellate court held that "this provision does not say the money was to be paid for the building expansion and trade fixtures (which are categorically different from concrete and dirt work)" and concluded that because the lease did not specifically address the scenario of handing over trade fixtures to Landlord, the trade fixtures remained with Tenant:

> Because paragraph twenty-eight does not specifically address ownership of the building expansion and trade fixtures, it does not support the trial court's conclusion that "the parties expressly agreed that at the expiration of the lease, improvements to the property made by lessee…belonged to lessor…."

*Id.* at 888.

In this case, even taking as true Landlord's argument that the Generator is an attached trade fixture, the Lease does not specifically address who gets attached

fixtures. In that vacuum, *Cremers* requires application of the general rule: "on termination of a lease, trade fixtures are presumed to be the tenant's property and are thus removable by the tenant." *Id.* at 884. Texas "[c]ourts will not declare a forfeiture unless they are compelled to do so by language which can be construed in no other way." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987). Without a lease that specifically states that trade fixtures go to Landlord, this Court must not permit the forfeiture of Encore's Generator to Landlord.

## B. Trial Court Erred by Declaring "The Generator is an attached trade fixture."

Even if this Court determines that Tenant was not permitted to take the generator as a trade fixture (regardless of whether it was attached or unattached), the trial court's declaration of a factual matter ("The Generator is an attached trade fixture"; [CR741]) was legally and factually erroneous.

### 1. No Evidence in the Summary Judgment Record of Attachment

Landlord as movant carried the burden to prove as a matter of law that no genuine issues of material fact existed on any elements of its counterclaim. *See* TEX. R. CIV. P. 166a(c). Landlord premised its awarded declaratory relief on a factual determination of whether the Generator was attached or unattached. Landlord, however, did not submit any evidence of attachment at all—not in its original motion [CR73], amended motion [CR292], or supplemental brief specifically on the issue of attachment [CR717].

6

Apparently realizing that it did not have any evidence in the summary judgment record to support factual determinations on whether the Generator was attached or not, filed a Motion for Leave to File the Declaration of Steven M. David. [CR726-40]. Despite the need for leave, Landlord failed, however, to obtain any ruling on the Motion and the trial court did not grant leave to add this declaration to the summary judgment record, rendering it immaterial to this Court's decision on appeal.

Given Landlord's failure to meet its summary judgment burden, the trial court erred by declaring into existence a factual premise ("The Generator is an attached trade fixture") upon which rests the trial court's ultimate legal conclusion ("Tenant may remove the Generator only with the Landlord's permission.").

### 2.    Genuine Issues of Material Fact Exist on the Issue of Attachment

Even if the Court considers the Davis affidavit for which leave was never granted, the competing evidence of attachment shows that genuine issues of material fact existed to prevent the trial court's declaration that "The Generator is an attached trade fixture."

In addition to the Davis affidavit, Landlord points to purported admission of Encore that the Generator is "connected" to the premises. [Resp., p. 21 (citing CR351)]. Landlord then combines this single verb with the affidavit to conclude that the Generator is attached as a matter of law because of an electrical connection to

7

the building, that the Generator is bolted to the parking lot, and a purported non-specific purpose for the Generator's existence. Not only is Landlord wrong on its facts, but the facts are disputed, and the conclusion itself runs contrary to the cases cited by Landlord.

Merely being "connected" does not an attachment make. Rather, Texas law shows that a high level of integration and unusual modifications to the property unique to the improvement or fixture are required to find attachment. Each of the following cases cited by Landlord in its Response Brief either (a) show a substantially higher level of integration and unique modifications than exists with the Generator or (b) show the absence of evidence indicating attachment for the Generator:

**Attached**
- ***Nine Hundred Main, Inc. v. Houston***, 150 S.W.2d 468, 471-472 (Tex. Civ. App.—Galveston): 40,000-pound, building-wide HVAC system built into the walls and ceilings of each floor of a five-story building that required tearing out the walls to remove the piping and included numerous separate parts throughout the building, such as vent fans, eleven cooling units, large humidifier, cooling tower on I-beams enclosed in plaster, electrical starter, electrical panel, and a vent fan.
- ***Van Valkenburgh v. Ford***, 207 S.W. 405, 420 (Tex. Civ. App.—Galveston 1918): 30,000-pound engine attached by 4-foot-long bolts to a special concrete foundation specifically laid to hold the engine and set out of the ground so as to make that the only use of the concrete foundation
- ***Connelly v. Art & Gary Inc.***, 630 S.W.2d 514, 514-15 (Tex. App.—Corpus Christi 1982): 16' wide auto parts sign 46' high and sunk 12' deep into the ground, secured by concrete poured specifically to surround the 12' of sunk pole, and whose removal required leaving the concrete in the ground 12' deep

**<u>Not</u> Attached**

- *Neely v. Jacobs*, 673 S.W.2d 705, 708 (Tex. Civ. App.—Fort Worth 1984): hydraulic lifts set in a 9-foot deep concrete pit were considered trade fixtures despite their removal requiring concrete collars to be broken, a hole dug around the base of the lifts, and they be pulled out with a tow truck because replacing a small amount of broken concrete did not make it a permanent fixture
- *Eckstein v. Webb Walker*, 178 S.W.2d 532, 535 (Tex. Civ. App.—Fort Worth 1944): an iron 30x100 foot shed supported by four-inch iron columns placed into newly added concrete poured into holes in the property that, when removed, merely left the property with the same holes that existed before the improvement
- *Schumann v. Jenkins*, 40 S.W.2d 214, 215 (Tex. Civ. App.—San Antonio 1931): Small wooden frame house built on a specially constructed raised-base concrete floor (2 ft high) with three protruding bolts for gas generator, with metal conduit; constructed as suggestion and knowledge to be a fixture

These opinions highlight the factually intensive analysis for determining whether an item is attached or unattached to real property. Even the sparse facts of the Davis affidavit and the "admission" of "connection" to the premises do not rise to the level of satisfying Landlord's burden to prove attachment. This is especially the case considering Encore's rebuttal evidence on these points.

The record below contains evidence rebutting the assertion of attachment that confirm the existence of genuine issues of material fact. Verified facts submitted by Encore address both the physical evidence and Encore's intent that the Generator is a trade fixture:

> 2. Encore and Landlord entered into a lease dated December 9, 2011. After the lease commenced, Encore requested and was given permission by Landlord to place a generator outside the leased premises but out in the parking lot of the property. The generator was for Encore's exclusive use in its business, and it was paid for exclusively by Encore. Landlord did not

9

participate in the purchase of the generator. Encore, in cooperation with Landlord, placed the generator on the property and connected it to the leased premises only.

3. At all times, Encore fully intended that the generator would be and remain unaffixed to the property, easily removable, and solely the personal property of Encore. Encore never intended that the generator was or would become a permanent feature of Landlord's property. In fact, the generator has always been easily removable from its location on Landlord's property.

4. At the conclusion of Encore's lease, however, Landlord had the audacity to refuse Encore's effort to remove the generator. To date, Landlord has maintained illicit possession and control over the generator and refused all of Encore's requests that Encore be allowed to recover the generator, which is Encore's personal property. Removal of the generator would not cause material or permanent injury to Landlord's property, and Encore has repeatedly offered to restore the parking spaces on which the generator sits to their original condition. Encore has reasonably attempted in good faith to secure the release of the generator from Landlord, to no avail. As a result, Encore has been damaged, at the very least, in the value of the generator.

[CR12-13 (factual assertions); CR16 (verification of the factual assertions)].[2]

Thus, even when considering the Davis affidavit, the trial court was faced with competing evidence on the factual issue of whether the Generator was attached or unattached. For example, unlike the concrete pits (*Neely*), holes (*Connelly*), and raised unique platforms (*Ford*; *Schumann*), the Davis affidavit shows the concrete under the Generator is level with and consistent with the existing parking lot. [CR738]. One example of a fact countering attachment the electrical connection to the building. Section 21, Sentence #3 specifically allows Tenant to take unattached

---

[2] Not only were the factual assertions and verification part of the record on their own [CR12-13, CR16], but Landlord's Amended Motion for Summary Judgment attached them as well [CR351-355], further confirming their existence in the summary judgment record and applicability to the trial court's summary judgment decision.

trade fixtures that have cabling/wiring connections. [CR323]. Thus, the contract requires discounting such connections when determining attached versus unattached.

Pursuant to black letter law on summary judgment, the factual determination that the Generator was attached and subsequent summary judgment rulings were error given the competing evidence and should have been left for discovery and resolution on the merits.

### 3. No Actual Judicial Notice Occurred; Regardless, Judicial Notice is Improper for Specific Facts on the Generator's Status

Landlord tacitly admits to the paucity of evidence in the record below by newly arguing on appeal that the trial court *might* have based its factual declaration of attachment by simply taking judicial notice of the mere "general characteristics" of generators. [Resp., p. 22-23]. Landlord erroneously relies on the principle of judicial notice to meet its evidentiary burden.

There is no evidence that the trial court took judicial notice of any facts, much less what facts were or should be considered in the record. Landlord does not cite to any request for the trial court to take judicial notice of any facts, and the trial court's summary judgment order references no reliance on judicial notice. [*See* CR741]. Rather, the trial court's summary judgment order sets out what was considered, to the exclusion of any judicially-noticed facts now relied on by Landlord: "Upon review of the record and the pleadings, including the Amended Motion for Summary

11

Judgment and the Exhibits thereto, the Response and all supplemental briefs; and all evidence properly before it, the Court hereby grants in part 2608 Inwood, Ltd.'s Amended Motion for Summary Judgment." [CR741]. Landlord's belated attempt to find some evidence to support the trial court's order runs counter to the record below and the proper use of judicial notice.

Even if this Court were to consider the unproven taking of judicial notice as a basis for the trial court's summary judgment order, applying it here as requested by Landlord would be error. A "judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* TEX. R. EVID. 201(b). A fact of which judicial notice can be taken is "a matter of evidence and knowledge on the part of courts which requires no formal proof." *Harper v. Killion*, 348 S.W.2d 521, 523 (Tex. 1961) (quoting *Burtis v. Butler Bros.*, 226 S.W.2d 825, 830 (Tex. 1950)).

Landlord first relies on the 1931 opinion of *English v. Miller*, where an "aeroplane" pilot was sued for negligence after a crash while doing loops low to the ground. 43 S.W.2d 642, 644 (Tex. App.—Amarillo 1931). The trial court felt it necessary to take judicial notice of what an "aeroplane" was and its general characteristics. *Id.* The case, however, did not turn on any details of the "aeroplane" because it was undisputed that the "aeroplane" was not defective and in good

12

condition—the only question was whether the low loops were negligent. *Id.*

*English* is simply irrelevant to this case. Recognizing the mere existence of a plane and its ability to do loops is certainly a matter for judicial notice where those general characteristics are not in dispute (much less any specific characteristics or defects). By comparison, Landlord seeks to supply specific facts about the Generator to prove that it is an attached fixture. If anything, generators are commonly known to span a wide spectrum of sizes, installation methods, connection types, and removability options. Landlord does not rely on mere general characteristics tangentially related to the underling issues but instead belatedly adds specific facts on an assortment of variable characteristics that it otherwise failed to supply to meet its burden. This is far outside the permissible spectrum of a trial court's ability to take judicial notice.

Landlord's reliance on *Capitol Aggregates Inc. v. Walker* is even less supportive of its position. 448 S.W.2d 830, 832-33 (Tex. App.—Austin 1969). The trial court was tasked with determining whether a lien against real property also impacted a mobile home mounted on cement blocks on the property, which turned on whether the mobile home was affixed to the land. *Id.* at 832. The trial court took judicial notice as follows to protect the mobile home from the lien: "I take judicial notice of the law of gravity and frictional adhesion and find that such structure was thereupon affixed by the plaintiffs to the lot of land…." *Id.* That court's recognition

of the universally accepted scientific principle of gravity does not allow Landlord to now add specific facts about the Generator to the record to meet its burden. In sum, Landlord cannot rely on an assumption of judicially noticed, specific characteristics of the Generator to support its motion for summary judgment.

**C.     The Lease is Ambiguous if Landlord's Interpretation is Deemed Reasonable**

Encore's interpretation of the Lease as set forth in Section A above is reasonable and consistent with Texas law on contract interpretation. As Encore also shows above, Landlord's interpretation requires reading into Section 21 the option of Landlord to bar Tenant's removal of attached trade fixtures under Sentence #4 where none exists given the term only expressly grants the option of Landlord to force removal. If that interpretation is also found to be reasonable, then an ambiguity exists that must be resolved on the merits (and that was not resolved by the trial court's order and judgment).

**D.     Landlord Cannot Prevail on its "Generator as Improvement" Argument**

Landlord errs in multiple ways by asserting that the Generator is an improvement. Sentence #2 of Section 21 reads: "At the expiration or termination of this Lease, Tenant shall deliver to Landlord the Premises with all improvements located therein in good repair and conditions…."

***First***, Landlord did not file a notice of appeal to challenge the trial court's judgment, which declared that "the Generator is an attached trade fixture." [CR741].

14

*See* TEX. R. APP. P. 25.1(c). Having failed to file a notice of appeal challenging the trial court's determination that the Generator is a trade fixture, as opposed to an improvement, Landlord is barred from doing so in is Response Brief.

**Second**, "improvements" is not defined in the Lease to include trade fixtures. To add a definition to the Lease violates Texas law on construing contracts, particularly given that the Lease expressly mentioned "improvements" in Section 21 separately from the various references to "trade fixtures." *See, e.g.*, *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990) (a word has the same meaning throughout a contract, and different words will not be read superfluously to have the same meaning). Rather, "improvements" is used elsewhere in the Lease in a way that shows its means items like adding drywall or painting, and which plainly separates it from trade fixtures. Section 8(a) of the Lease is entitled "Improvements; Alterations." [CR376]. It explains improvements are something that would be "constructed," which is not the case with a trade fixture. Section 9 on "Use" speaks to "improvement work" having to comply with the ADA act, which only applies to construction items. [CR377]. Section 10(d) also speaks of "improvements" in the vein of construction items by requiring "Tenant shall pay for the cost of any demising walls or other improvements necessitated by a proposed subletting or assignment." [CR378].

15

The best example are Sections 11(c) and 21. Section 11(c) requires that insurance "covers … Landlord's or Tenant's fixtures, personal property, leasehold improvements, or business…." [CR380]. This plainly distinguishes, in the express Lease language, improvements from fixtures. This is the same in Section 21, which says "Tenant shall remove such alterations, additions, improvements, trade fixtures…as Landlord may request…." [CR386]. It is a bedrock of Texas contract interpretation that separately identified items in the same list cannot refer to each other. *See, e.g., Gonzalez*, 795 S.W.2d at 736. Because the parties expressly did not include "trade fixtures" under the term "improvements," Sentence #2 of Section 21 does not provide any support to Landlord's interpretation of the Lease.

***Third***, Landlord errs in asserting that the Generator is an improvement and not a trade fixture because it "has no specific trade-related connection to Encore's 'call center'[.]" Not only does Landlord fail to point to any evidence supporting this factual contention, but Encore's evidence in the summary judgment record expressly rebuts this claim and creates a genuine issue of material fact: "The generator was for Encore's exclusive use in its business, and it was paid for exclusively by Encore. Landlord did not participate in the purchase of the generator. Encore, in cooperation with Landlord, placed the generator on the property and connected it to the leased premises only." [CR12-13, 16]. The fact that the Generator was connected to

16

Encore's leased space only further confirms the intent that this was for Encore's trade use only.

On this record, Landlord is legally barred from challenging the trial court's judgment and has factually failed to eliminate the existence of genuine issues of material fact. Accordingly, the "improvements" angle does not support affirming the trial court's judgment.

## D.  Improper Declaratory Judgment

Landlord improperly expands the single requested declaration to a list of four declarations to create issues and relief beyond those raised by Encore's claims. In its live pleading, Landlord sought a single declaration:

> Defendant/Counter-Plaintiff seeks a declaratory judgment under Chapter 37 of the Texas Civil Practice and Remedies Code, the Texas Declaratory Judgments Act, declaring that Inwood/Landlord has not given approval (via exercising its option to allow Encore/Tenant to remove the Generator, requesting that Encore/Tenant. remove the Generator, or otherwise) to Encore/Tenant to remove the Generator from the Project.

[CR20-21, para. 16]. By comparison, Landlord's Response brief states that

> Inwood[/Landlord] requests the following declarations pursuant to the parties' contractual rights and obligations:
>
> - It is undisputed that Inwood/Landlord has not given approval (via exercising its option to allow Encore/Tenant to remove the Generator, requesting that Encore/Tenant remove the Generator, or otherwise) to Encore/Tenant to remove the Generator from the Project.
> - The Lease, a valid contract, provides that the Generator shall remain on the Project unless Inwood/Landlord gives approval to Encore/Tenant to remove it from the Project.
> - Encore/Tenant will be in breach of the Lease, a valid contract, if it removes the Generator from the Project.

- Pursuant to the Lease, as an item attached to the real property, the Generator is the property of Inwood/Landlord.

[Resp., at 39-40]. But simply because Encore's claims sound in tort while Landlord's sound in contract does not render Landlord's single requested declaration greater or different.

Viewed in their substance, Encore's claims are premised on contractual rights to ownership and possession—i.e., the ability to retain ownership and possession of the Generator under the terms of the Lease and Texas law without any restriction, such as Landlord's approval. Mirroring that is Landlord's single declaration that Landlord has not given approval for removal, which would be a contractual restriction rebutting the right of possession/ownership element of Encore's tort claims. Nowhere in Landlord's actual pleading are the three additional declarations Landlord has newly added to the appeal. Even viewed generously, Landlord's pleaded declarations do not seek any decision on breach upon removal or that the Generator is attached and property of Landlord. [See CR20-21, para. 16]. Accordingly, the trial court's grant of summary judgment on Landlord's declaratory judgment claim was reversible error.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Appellant/Plaintiff/Tenant Encore International Investment Funds, LLC respectfully requests that this Court reverse the trial court's grant of summary judgment as outlined above, remand for

further proceedings, and grant to Appellant of all relief at law and equity to which it is entitled. In the alternative, Appellant requests that this Court determine Section 21 ambiguous and also remand for further proceedings consistent therewith.

Respectfully submitted,

/s/ William S. Richmond
William S. Richmond
Texas Bar No. 24066800
brichmond@pcrfirm.com
**PLATT CHEEMA RICHMOND PLLC**
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
T: 214.559.2700
F: 214.559.4390

**COUNSEL FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

This brief was prepared using Microsoft Word 365 in Times New Roman font. The font size in the text is 14-point. The font size in the footnotes is 12-point. This brief contains 4,738 words, not counting the sections excluded by TEX. R. APP. P. 9.4(i)(1).

/s/ William S. Richmond
William S. Richmond

## CERTIFICATE OF SERVICE

The undersigned counsel for Appellants certifies that a true and correct copy of the foregoing instrument was served upon counsel for the Appellee, by way of electronic mail through e-filing on this 20th day of June 2019.

/s/ William S. Richmond
William S. Richmond
COUNSEL FOR APPELLANT